[No. 22420. Department One. December 15, 1930.]

THREE RIVERS GROWERS' ASSOCIATION, *Respondent, v.* PACIFIC FRUIT & PRODUCE COMPANY, *Appellant.*[1]

*Joseph C. Cheney* and *Elwood Hutcheson,* for appellant.

*M. M. Moulton* and *Charles L. Powell,* for respondent.

[1]Reported in 294 Pac. 233.

FULLERTON, J.—In this action the respondent, Three Rivers Growers' Association, recovered against the appellant, Pacific Fruit & Produce Company, for a balance claimed to be due on the purchase price of a carload of strawberries.

The respondent is a co-operative marketing association, having its principal place of business at Kennewick, in this state. The appellant is a brokerage concern, dealing in farm and orchard products, having its principal place of business at Portland, in the state of Oregon. In the early part of June, 1927, the appellant ordered from the respondent a carload of strawberries, directing that they be shipped to Calgary, in the Dominion of Canada, consigned to a wholesale dealer at that place. The carload was shipped on July 9, 1927, according to the directions given. The car shipped contained 1,050 crates, and was billed to the consignee at four dollars per crate. By the agreement between the appellant and the respondent, the appellant was to receive a discount of ten cents per crate.

At the time the order for the berries was given, nothing was said about the size of the carload that was to be shipped. It seems that there were three sizes of cars recognized by the trade as a carload, namely, a minimum car containing 770 crates, a medium car containing 950 crates, and a maximum car containing 1,050 crates. The car shipped, as we have noted, contained the maximum load, and when it reached the consignee, it made complaint to the appellant of an overload. The appellant passed the complaint on to the respondent, and it agreed that one hundred crates might be taken from the car and turned over to its own broker at Calgary, reducing the load to a medium carload. In settlement for the berries the consignee of the car dealt with the appellant, settling with it on a basis which netted the respondent, after deduct-

ing the agreed discount, the sum of $3,675. This sum the appellant remitted to the respondent by check, which check the respondent received and cashed.

The respondent, contending that the sale of the berries was a sale outright to the appellant, brought this action to recover what it conceived to be the difference between the contract price of the berries and the amount remitted to it. The trial court held that the sale was a sale to the appellant, but allowed a greater discount than the respondent admitted as allowable in its complaint; stating the account between the parties in the following manner:

"V. That by virtue of said sale there became due and owing from the defendant to the plaintiff the total sum of $4,067, as follows:

| | | |
|---|---|---|
| "Agreed sale price, 1,050 crates at $4 per crate .............................. | | $4,200 |
| "Less discount of 10c per crate on 1,050 crates .............................. | $105 | |
| "Less additional discount of 10c per crate on 280 crates ....................... | 28 | |
| Net balance due................. | | $4,067 |

"VI. That on or about the 21st day of June, 1927, the defendant paid to the plaintiff on account of said purchase price the total sum of $3,675, and that there is now due and owing from the defendant to the plaintiff the aforesaid sum of $392, together with interest thereon at 6% per annum from and after the 21st day of June, 1927."

On its appeal, the appellant makes two principal contentions: First, that it acted as a broker for the respondent in the transaction and was not itself a purchaser of the carload of berries; and second, that, conceding that it was a purchaser, there was an accord and satisfaction of the differences between the parties.

On the first of the contentions, there is a con-

flict in the evidence. The manager of the appellant testified that, early in the year 1927, he called the manager of the respondent by telephone and asked for and obtained leave to sell strawberries for the respondent in the territory of Montana and western Canada at a brokerage commission of ten cents per crate, and that it did, in the ensuing berry season, make a number of such sales, one in particular being to the very purchaser who purchased the strawberries here in question. The respondent's manager testified directly to the contrary. His version of the agreement is that the respondent declined to permit the appellant to sell as a broker any of its strawberries, but offered to sell such berries to the appellant as it might desire to buy, at a discount of ten cents per crate from the current prices, and that the prior dealings between the parties were on this basis.

A number of telegrams and letters passed between the parties with reference to the transaction, but these, as we read them, do not lend much support to either party. But, in so far as they do bear upon the question, they seem to us to sustain the contention of the respondent. The sale had its origin in a telegram sent by the appellant to the respondent requesting the respondent to "wire quick quotations on a carload of berries prompt shipment." It contained also a query concerning another car, but nothing to indicate the person to whom or the place at which shipment of the car was desired. The answer of the respondent was evidently made over the telephone. The answer returned is not in the record, and its purport can only be gleaned from the communications between the parties which followed. On June 8, the respondent sent to the appellant two telegrams; the first reads, "Prospects very favorable for strawberry car tonight;" and the second, "Account rain two hundred

crates short ship tomorrow night sure." To these the appellant answered by a telegram dated June 9, saying: "All right ship berries today Plunkett Savage Calgary advise early total number crates." Under the same date the respondent wired in answer: "Shipping thousand fifty berries car A R E five nine seven."

These telegrams, manifestly, do not support the contention that the sale of the berries was a sale by the respondent to the dealer at Calgary. Their tendency is to the contrary. Certainly, if the respondent was selling to a party other than the appellant, it would want to know who the party was, so as to have some idea as to his ability to pay for the berries when delivered, yet the telegrams furnish no information as to these matters. Indeed, in so far as they read upon their face, they do not indicate that the respondent knew to whom the berries were to be consigned until after the sale was consummated. To our minds, therefore, they are consistent with the respondent's contentions; that is to say, consistent with the contention that the sale was to the appellant, but inconsistent with the contention that the appellant was a mere broker, selling the berries for the respondent on a stated commission.

The further evidence also points to the same conclusion. The consignee complained of an overload, and also complained of the condition of the berries on their arrival. But it made these complaints to the appellant, not the respondent. Such information as the respondent had of the complaints came through the appellant—an indication, at least, that the appellant had represented to the consignee that it was the owner of the berries and was the actual consignor.

Further support for the contention of the respondent is found in a letter written by the appellant to the respondent relating to a carload of strawberries,

ordered by telephone a few days previous to the transaction in question. The letter was confirmatory of the telephone order, and contains this language:

"This confirms our telephone conversation with you this morning, at which time we bought from you a carload of strawberries to be shipped direct to Plunkett & Savage, Calgary, Alberta, Canada, via Kingsgate, car to be shipped on Friday. Please make out your export papers on a basis of $3.85 per crate and draw a draft on us at Portland on a basis of $3.65 per crate."

Conceding, therefore, that the burden of proof was on the respondent to show that the sale of the strawberries was to the appellant and not to the consignee, we cannot conclude, against the conclusion of the trial court, that the respondent has not sustained the burden.

On June 14, 1927, the appellant forwarded to the respondent a check for the sum it conceded to be due on the purchase price of the strawberries, accompanied by a letter containing the following:

"Inclosed herewith is our check, No. 17587 for $3,675, representing the net returns on A. R. C. 597. We were able to sell 770 at f. o. b. price of $4; 280 we sold at $2.50 f. o. b. We have deducted from this our ten cent brokerage, out of which we have paid our broker in Calgary $25."

The respondent received the letter and check and cashed the check, and some five days thereafter notified the appellant that it would not accept the payment as a satisfaction in full of the obligation. It is on these facts that the appellant bases its contention that there was an accord and satisfaction.

The question, what constitutes an accord and satisfaction of an obligation, has frequently received the consideration of this court. The several cases presented have varied so widely in their facts that the

conclusion reached in the one case affords but little aid in the solution of another. We have, however, announced certain principles applicable to the question generally to which all of them may be relegated. The one most frequently announced is stated in the following language:

"The general rule is that, where a debtor sends to his creditor a check for the amount he is willing to pay, and at that time informs the creditor that he intends the check to be considered as full payment, then, by the acceptance and cashing of the check, the creditor agrees to the settlement and cannot thereafter seek additional compensation." *LeDoux v. Seattle North Pacific Shipbuilding Co.,* 114 Wash. 632, 195 Pac. 1006.

See, also, *Ingram v. Sauset,* 121 Wash. 444, 209 Pac. 699; *First National Bank of Ritzville v. White-Dulaney Co.,* 123 Wash. 220, 212 Pac. 262; *Plymouth Rubber Co. v. West Coast R. Co.,* 131 Wash. 662, 231 Pac. 25.

In *Ingram v. Sauset, supra,* we quoted with approval the following statement of the rule from 1 Cyc. 332:

" 'To constitute an accord and satisfaction it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions. The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction.' "

Tested by these rules, we cannot conclude that there was here an accord and satisfaction. There had not theretofore been a dispute between the parties as to the amount due. After the appellant closed the transaction with its purchaser, it made a statement of the

account as it conceived it to be, and sent its check to balance the account. It did not then inform the respondent that it intended the check to be a payment in full, nor was the remittance accompanied by any act or declaration which would amount to a condition that the money tendered, if accepted, would be accepted as a satisfaction in full. The situation closely parallels that presented in *Ingram v. Sauset,* where the following language was used:

"The fallacy of appellants' position lies in this: First, whatever Sauset's intention, the check was not offered in full satisfaction of the demand, though respondent thought that Sauset intended or hoped it would be so accepted; no conditions accompanied it and there was nothing to indicate that it might not, in the event that the payee declined to accept it as full payment, be applied on account and further negotiations be had as to the remainder of the claim. Second, there is nothing in the record to indicate that respondent accepted the check as full payment."

The judgment is affirmed.

MITCHELL, C. J., MAIN, and HOLCOMB, JJ., concur.