68 P.(2d) 663

## MILLER v. PRINCE STREET·ELEVATOR CO.

No. 4163.

Supreme Court of New Mexico,
May 17, 1937.

Hatch, Grantham & Manson, of Clovis, for appellant.

James A. Hall, of Clovis, for appellee.

ZINN, Justice.

Appellee sued appellant for the conversion of appellee's wheat stored in the grain elevator of appellant. The case was tried to the court without jury, and from a judgment for appellee, this appeal is prosecuted.

Appellant, a domestic corporation, was engaged in the grain and elevator business in Curry county. It bought and sold wheat and accepted wheat for storage. Appellee delivered approximately five thousand bushels of wheat to the elevator of appellant under the following conditions: The wheat was accepted by appellant for storage to be held until September 1, 1931, free of storage rental. The last load was delivered on or about August 17, 1931. Rental to be paid subsequent to September 1, 1931, was on the basis of 1½ cents per bushel. Appellant was making advances to his customers in the amount of 15 cents per bushel. Appellee, after selling some of his wheat, had in storage with appellant on August 19, 1931, 3,489 bushels and 10 pounds of wheat. On this amount appellant advanced to appellee 15 cents per bushel, or the sum of $523.50. Such advance was to be deducted from the final sale price of the wheat in storage. The wheat of appellee was mixed with other wheat of like grade in appellant's elevator, it being the duty of appellant to restore

to appellee wheat of like kind and amount upon demand.

It appears that the elevator of appellant changed ownership, and on October 17, 1931, without notice to appellee, appellant sold appellee's wheat for the price of 28 cents per bushel, the then prevailing market price. Appellant made deductions for the amount previously advanced together with storage charges and drew a check payable to appellee for the difference. To the check appellant's manager attached a "Settlement Sheet," accounting to appellee, and to which was attached a note signed by Helm, manager of appellant company. This note reads as follows:
"Mr. Miller

"As you possibly know the Elevator changed hands and I have Positive instruction to Close up all acct. The Elevator changed hands Oct. 5th, but last I talked with you you wanted to hold to the 15th so I was in to see this morning & could not find you—basis today's market find statement & check.

"G. W. Helm."

The check, settlement sheet, and note were delivered to a brother-in-law of appellee. Shortly thereafter these items came into the possession of appellee, and on October 24, 1931, appellee went to appellant's elevator and protested vigorously the entire transaction and told Helm it was appellee's intention not to sell the wheat but hold for a higher price. Appellee tendered the check to Helm. Helm offered to buy an equal amount of wheat on the "futures" market. This appellee refused. Appellee was informed by Helm that the transaction would have to stand as made. Appellee then took the check and on the same day cashed it. The prevailing market price for wheat at that time had reached the figure of 33 cents per bushel. On January 7, 1932, two and one-half months after the cashing of the check, appellee brought this action.

The one issue presented by appellant, which we deem determinative of the case, is the appellant's claim of an accord and satisfaction. In detail the conversation that took place between appellee and Helm on October 24, 1931 and upon which the claim is based, follows. This is taken from the evidence of the appellee. His testimony is as follows:

"Q. All right, what was the conversation? A. Well, I asked him what he meant by mailing the check when I put the wheat in there for storage. He said he had lost the elevator and had to give possession of it. I said that was not my understanding when I put the wheat in there. He said the wheat was sold and that is all he could pay for it. I offered him the check; I was not ready to sell the wheat.

"Q. You never agreed to sell the wheat then? A. No, sir.

"Q. Mr. Miller, after receiving this check and when you went down to talk this over with Mr. Helm, the Manager, I wish you would relate, as near as you can, the substance of that conversation.

I don't expect you to say, word for word? A. That is, after I received the check?

"Q. Yes, Sir? A. Well, I went down there and asked him why he had sold the wheat; and he said he had to sell the wheat to give possession of the elevator, and I told him, I say, 'I want the wheat, I can't accept your check. If you have got to give possession of your elevator I want my wheat, and I will get a truck and move it out of the elevator.' And he says, 'your wheat is in Chicago, so far as I know, we don't have it here at the elevator.'

"Q. Was anything further said in that conversation? A. Well, I got kind of smart myself, I got pretty tough about it, but it didn't do me any good. All I demanded was the wheat and I could not ever get it, unless I taken a gun on down there. I might have got it then.

"Q. Did you ever tender that check back to Mr. Helm? A. Yes, Sir.

"Q. Down there at that time? A. Yes, Sir.

"Q. You tried to get him to take it back? A. Yes, Sir, taken it in and throwed it on the desk to him."

The appellee having cashed the check tendered him by appellant, this the appellant contends is an accord and satisfaction. The court ruled in favor of appellee on all issues and made findings accordingly.

After making adjustments for storage charges and money received by appellee from appellant, the court awarded appellee judgment for the difference, in the sum of $659.10, plus interest and costs.

To be effective, an accord and satisfaction must involve an unliquidated or disputed claim, as an existing dispute is one of the elements necessary to make such an agreement and its performance binding upon either party. The law has been clearly enunciated by Justice Bratton, in the case of Frazier v. Ray, 29 N.M. 121, 219 P. 492, 493, where, speaking for this court, he said:

"An accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such substituted agreement. It is an agreement and the performance thereof, whereby one of the parties undertakes to perform and the other to accept in satisfaction of a claim or demand something other and different from that to which each considers himself entitled. To be effective, it must involve an unliquidated or disputed claim, as an existing dispute is one of the elements necessary to make such an agreement and its performance binding upon either party. Where no dispute exists with regard to the sum due, no consideration exists to support the agreement of the creditor to receive less than the agreed sum, or to release the debtor from the unpaid portion thereof. * * * When the appellee accepted and cashed such check and appropriated unto

himself the proceeds thereof, well knowing that·such payment was burdened with such condition, he thereby accepted it as tendered. He could not accept the benefit of such tender without likewise accepting its condition.

"When a tender is made by a debtor to a disputed claim, under such circumstances that the creditor must understand it is offered in full payment, he has but one of two alternatives open to him—either to accept it as tendered, or to reject it and after accepting it he will not be heard to say that it was accepted under protest or upon any terms and conditions different from those imposed by the debtor who has the right to prescribe the conditions under which he makes the tender. Such a creditor is conclusively estopped to say that he did not accept such tender in full payment of his demand. The moment the appellee cashed the check, the minds of the parties met, and they mutually agreed that it constituted full payment."

 At the time when appellee made a demand upon Helm for a return of the wheat, the sum due appellee for the conversion of the wheat was unliquidated. The amount of damages was still undetermined and the claim was not a liquidated demand at that time. If the claim had been liquidated, it would clearly come within the rule laid down by this court in the case of Buel v. Kansas City Life Ins. Co., 32 N.M. 34, 250 P. 635, 52 A.L.R. 367.

In the Buel Case we quoted a definition of "liquidated" from Swindell v. Youngstown Sheet & Tube Co., 230 F. 438, 442, 144 C.C.A. 580, as follows: " 'The word "liquidated," in the sense of the rule relied on by counsel' (with respect to accord and satisfaction) 'signifies that the amount claimed has been ascertained and agreed on or fixed by operation of law.' " In the same case we said: "In the case at bar it cannot be questioned that the parties agreed, by the policy, upon the amount of the indemnity. There never was dispute as to liability for $2,000 because of the death of the insured. There was dispute as to any liability for accidental death, but none as to the amount to be paid if the death were accidental. By the payment made, appellee obtained nothing to which she was not entitled, and appellant gave up nothing it could rightfully retain. If the claims were to be considered separately, the death claim was liquidated and undisputed; the accident claim liquidated and disputed. If it be treated as a whole, the larger amount was liquidated, and the smaller amount paid was conceded. However viewed, we find it impossible to locate the consideration for the release of the amount here sued for. This conclusion we think well supported by authority."

If we attempt to paraphrase some of the language of the Buel Case to accord with the facts in this case, we are unable to do so. Paraphrased it would read as follows: "There was dispute as to any liability for conversion (accidental death) but none as to the amount to be paid if conversion took place (if the death were accidental)."

In the case at bar there was a dispute as to the amount to be paid if the transaction were held to be a conversion rather than a sale. (The appellant claimed it was a sale.) If the latter, of course, the sale price agreed upon controlled. If a conversion, even if we consider the parties in agreement on the market value of the wheat upon the day of the conversion (which we doubt our right to do), nevertheless they were widely apart on the amount to be paid by reason of the conversion. Certainly, that amount was unliquidated from any point of view.

The defendant urged the amount to be paid as the market value on the day of the conversion plus lawful interest. The extreme claim open to plaintiff under the authorities was the highest market value attained between the date of the conversion and the date of the trial. Between the high and low of the claims there are various modifications of the rule for measuring damage. The trial court adopted the rule of the highest market value between conversion and a reasonable time thereafter, fixed at six months. The soundness of the rule is questioned by appellant. However, we do not have to pass on that issue. So that, at the time of the claimed accord, there was truly uncertainty as to which of these measures of damages would be adopted by the court even if liability for conversion should be adjudged as it ultimately was. The least defendant could be called upon to pay was market value at the date of conversion.

There is nothing in the record to determine whether the parties at the time of the tender and cashing of the check mutually agreed on what that market value was. In addition, there were deductions to be made from such market value on account of storage charges after a certain time and an advance of 15 cents per bushel.

Do these circumstances render the demand unliquidated? We quote from 3 Words and Phrases, Second Series, 148, as follows: "The word 'liquidated,' in the sense of the rule that payment of a lesser sum is a discharge of the remainder where the amount in dispute is unliquidated, but that it is not a discharge where it is liquidated, means that the amount due has been ascertained and agreed on by the parties or fixed by operation of law. The rule does not apply where there is a bona fide dispute as to the amount actually due. A demand is not liquidated, even, if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a general dispute as to which is the proper amount, the demand is regarded as 'unliquidated' within the meaning of the term as applied to the subject of accord and satisfaction. T. B. Redmond & Co. v. Atlanta & B. Air Line Ry., 129 Ga. 133, 58 S.E. 874–876."

We necessarily conclude that the claim of appellee at the time of the conversion was an unliquidated demand, and the amount due appellee undetermined.

So finding we are brought to the proposition of the appellant when he claims that as a matter of law Miller could not accept the check under the circumstances and afterward claim a further payment.

▮ An "accord" is an agreement, an adjustment, a settlement of former difficulties, and presupposes a difference, a disagreement, as to what is right. A "satisfaction," in its legal significance in this connection, is a performance of the terms of the accord; if such terms require a payment of a sum of money, then that such payment has been made. Harrison v. Henderson, 67 Kan. 194, 72 P. 875; 62 L.R.A. 760, 100 Am.St.Rep. 386.

To constitute an "accord and satisfaction" in law dependent upon an offer of the payment of money, it is necessary that the money be offered in full satisfaction of the demand or claim of the creditor, and be accompanied by such acts or declarations as amount to a condition that if the money be accepted it is to be in full satisfaction and to be of such character that the creditor is bound so to understand such offer.

In Kingsville Preserving Co. v. Frank, 87 Ill.App. 586, it was held: "To constitute an accord and satisfaction of a claim unliquidated and in dispute, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that if the money is accepted it is to be in satisfaction, and such that the party to whom it is

offered is bound to understand therefrom that if he takes it he takes it subject to such condition."

In the case of Fuller v. Kemp, 138 N.Y. 231, 33 N.E. 1034, 1035, 20 L.R.A. 785, the court said: "To constitute an accord and satisfaction, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such condition. When a tender or offer is thus made, the party to whom it is made has no alternative but to refuse it, or accept it upon such condition."

If the check had been indorsed or there had been written on it "payment in full," "balance in full," "in full," or some equivalent and then tendered in satisfaction of a disputed account, accord and satisfaction would have been accomplished as an incident to payee's cashing same. This much must surely be conceded. The writings on and accompanying the check here involved, of themselves, declared no less certainly that the check was tendered in full and final discharge of defendant's liability, if there were present the element of dispute. What were the writings? The check was accompanied by a short note heretofore quoted in this opinion. The "statement" mentioned was marked "settlement sheet"

and was complete, showing 3,489.10 bushels of wheat to be settled for at 28 cents per bushel, amounting to $976.96, less storage of $78.49 and previous advance of $523.10, leaving a balance due of $374.97. The check was for $374.97, amount claimed to be due, and itself bore the writing on lower left-hand face of check, "For 3489.10 wheat," indorsed on the back when cashed, "J. C. Miller."

But it is suggested that such writings and indorsements constitute no more than an accounting by defendant conforming to his theory of the transaction at a time when for aught he knew no dispute existed or was likely to arise. Hence, it is said accord cannot, as a matter of law, rest upon the writings themselves and the mere subsequent cashing of the check. We are impressed by this argument and will so concede.

But the matter does not rest there. It must be looked through to the end before appraising the legal effect of what was done. If the condition were not fastened to the check when appellee attempted to compel its return, and if no dispute existed theretofore in reference to the account, certainly both the condition and the dispute arose coincidentally with what transpired on that occasion. The appellee enters the office of appellant's manager and demands a return of the wheat. He is told this is impossible, that the wheat is in Chicago, and that the amount tendered is all he could pay for it. The face of the writings accompanying the check's transmission disclosed that the amount of the check was tendered in full settlement, though at a time before appellant knew its amount would be disputed. But it now becomes disputed and vigorously. With Manager Helm's statement scarcely uttered, appellee Miller throws the check down on the desk before Helm, saying, "I can't accept your check," the equivalent of declaring: "I won't accept your check. It was tendered as a purported settlement. You had no right to sell my wheat and I refuse to accept it as such. Take it back."

Why did appellee momentarily refuse to accept the check? Unquestionably because of the condition which now, if not before, he appreciated as accompanying its acceptance.

If appellee had clung to his announced resolution, he would have been all right. There the parties faced each other, the one holding a check with a statement accompanying same to which the one (as payee) objected, and by reason of which the one tossed it over the desk to the other, saying, "I can't accept your check." He voiced his objections heatedly, testifying: "I got kind of smart myself. I got pretty tough about it, but it didn't do me any good." The check lies on the desk before them. The other says in effect: "I can pay no more. You can take it or leave it." The obvious implication from the situation described is that a condition clings to the check as it lies there before them. When appellee, moved by a "bird in the hand"

policy, reached out and reclaimed the check, and certainly after a sufficient time for reflection when he wrote his name on the back of it, and took from defendant's account and appropriated to his own uses its amount, he swallowed the condition. It is now too late, and has been too late ever since he cashed the check, to back up. See Warren v. New York Life Ins. Co., 40 N.M. 253, 58 P.(2d) 1175.

The law is clearly stated in Gulfport Wholesale Lumber Co. v. Boeckeler Lumber Co. (St. Louis Ct. of App.Mo.) 287 S.W. 799, 800, as follows: "If there is a controversy between the creditor and the debtor as to the amount which is due, and if the debtor tenders the amount which he claims to be due, but tenders it on condition that the creditor accept it in discharge of his whole demand, and the creditor does accept it, that will be an accord and satisfaction, as a conclusion of law, the principle being that one who accepts a conditional tender assents to the condition. And this is true, although the creditor protests at the time that the amount paid is not all that is due, or that he does not accept it in full satisfaction of his claim."

Upon what theory the appellee can justify his act in cashing this check, we are unable to understand. When he cashed it he knew, or is charged with knowing, that it was held subject to the condition that it was in full payment for the wheat involved. We are constrained to hold that the facts in this case accomplished an accord and satisfaction.

For the reasons given the judgment of the district court must be reversed, the cause remanded, with directions to dismiss the plaintiff's complaint and for costs.

It is so ordered.

HUDSPETH, C. J., and SADLER and BICKLEY, JJ., concur.

BRICE, Justice (dissenting).

To constitute an accord and satisfaction in law, dependent upon the offer of the payment of money, it is necessary that the money should be offered in full satisfaction of the demand or claim of the creditor, and be accompanied by such acts or declarations as amount to a condition that, if the money is accepted, it is to be in full satisfaction, and be of such a character as that the creditor is bound to so understand such offer. The mere sending of a statement of account showing a balance due, with a check for such balance, is not an accord; and if the check is cashed by the creditor it is not a satisfaction of the debt. Harrison v. Henderson, Adm'r, 67 Kan. 194, 72 P. 875, 62 L.R.A. 760, 100 Am.St. Rep. 386; M. A. Phelps Lumber Co. v. Bradford-Kennedy Co., 96 Wash. 503, 165 P. 376; Childs v. St. Louis Basket & Box Co. (St. Louis Ct. of App.Mo.) 271 S.W. 859; Gulfport Wholesale Lumber Co. v. Boeckeler Lumber Co. (St.L.C. of App.Mo.) 287 S.W. 799; Grapes v. Rocque, 97 Vt. 531, 124 A. 596; Three Rivers Growers' Ass'n v. Pacific Fruit & Produce Co., 159 Wash. 572, 294 P. 233; Bahren-

burg et al. v. Conrad, etc., Co., 128 Mo. App. 526, 107 S.W. 440; Pitts v. National Independent Fisheries Co., 71 Colo. 316, 206 P. 571, 34 A.L.R. 1033, and annotation beginning at page 1035; and annotations 75 A.L.R. 919.

If there was an accord and satisfaction, it resulted from the subsequent interview mentioned in the majority opinion, in which appellee first demanded his wheat, and was informed it had been shipped to Chicago. The appellant stated, *"That is all I can pay for it,"* which was as much as to say, "The check which I have tendered *is all I can pay for the wheat."* But that is far from saying: "If you accept this check it will be in full payment of all that I owe you on the transaction." The mere statement that, "It is all I can pay," might mean a number of things. It might mean that he was not financially able to pay more, or that he would not pay more; but that is not sufficient. The acts and words of the parties must have amounted to a contract resulting from appellant's tender of the check in full payment of the amount he owed on the wheat transaction; and appellee, knowing this was the condition of the tender, accepted the check with such condition attached.

It is stated in the majority opinion: "Why did appellee momentarily refuse to accept the check? Unquestionably because of the condition which now, if not before, he appreciated as accompanying its ac-

ceptance." I can see nothing in the evidence quoted in the majority opinion that authorizes any such conclusion. It was not accepted originally because appellee did not want to sell the wheat and he made that plain to appellant.

The majority concluded that the sending of the check, with the statement of account showing that it was intended as in full payment of the account, would not have been an accord and satisfaction if the check had been accepted. I am unable to understand how a different conclusion can be reached by anything that was said in the conversation between the appellee and the representative of the appellant.

There is not one circumstance to show that either party had in mind an accord and satisfaction, or that either knew their effect. The appellant never at any time, either by words or acts, made it a condition that if appellee accepted the check it would be in full settlement of the debt. This court by the majority opinion supplies a contract for the parties which they never made themselves, or, so far as the facts show, ever thought of.

Unliquidated debts cannot be settled by the delivery and acceptance of a less amount than due, if the delivery is accompanied only by a statement that "this is all that I can pay." That is not an accord and satisfaction.

The judgment of the district court should be affirmed.