NORTHERN FINANCIAL CORPORATION, APPELLANT, *v.* KESTERSON ET AL., APPELLEES.

[Cite as Northern Financial Corp. v. Kesterson (1971), 31 Ohio App. 2d 256.]

(No. 11477—Decided June 1, 1971.)

*Messrs. Santen, Santen & Hughes,* for appellant.
*Messrs. Wessel & Wessel,* for appellees Kenneth M. Kesterson, David L. Cole and Dale C. Cole.
*Messrs. Gay, Davis & Kelly,* for appellee Eugene L. Carlton.

SHANNON, J. This is an appeal on questions of law from an order of the Court of Common Pleas of Hamilton County.

For simplification in the recitation of facts, the plain- tiff-appellant, Northern Financial Corporation, and the substituted plaintiff, The Klarin Company, Inc., will be referred to as plaintiff, and the defendants-appellees will be referred to as defendants.

On April 11, 1967, defendants Kesterson and the Coles purchased from The Klarin Company, Inc., certain coin operated laundry equipment and executed a purchase money security agreement, which Klarin assigned to the Northern Financial Corporation. The note which was sign- ed by the purchasers was also endorsed over to Northern.

On March 9, 1968, Kesterson and the Coles sold the equipment to defendant Carlton, who assumed the loan. The original purchasers continued to be bound upon the terms of the note and security agreement.

On November 13, 1968, when Carlton defaulted, Klar- in reposessed the equipment on behalf of Northern. No payment had been made since May 1968, by any of the obligors.

The evidence conclusively establishes that the defend- ants were notified on December 7, 1968, that they were in default, were advised of the amount due, and that the re- possessed chattels would be offered at public sale at 10 a. m., December 21, 1968, at 3400 Kettering Boulevard, Dayton, Ohio, to be sold to the highest bidder whose bid was equal to or in excess of $2,000. Additionally, the notice stated that the equipment would not be sold for less than $2.000, terms cash, the proceeds to be applied first to the costs of repossession and sale, then to satisfy the indebt- edness—the defendants to be liable for any deficiency.

None of the defendants nor any bidder appearing, Klarin submitted its bid for $2,000. Testimony that plain- tiff had attempted to dispose of the equipment prior to and after public sale without success and that it had no value other than as scrap was adduced upon trial.

Plaintiff produced evidence to show that the cost of

repossession was $1,822.87, and that the balance due from defendants was $17,320.89, plus interest.

The suit to recover the deficiency was heard without intervention of a jury and the court granted judgment to plaintiff in the amount of $2,498.02, plus interest from May 25, 1968.

The court stated its findings of fact and conclusions of law. Finding of fact No. 6 is as follows:

"That at the time or repossession and sale, the reasonable market value of said laundry equipment was $15,-000.00 and was purchased on December 21, 1968, by the Klarin Company, now the substituted plaintiff herein for $2,000.00, of which sum $1,828.72 was paid as expense of retaking, holding and selling said equipment."

Conclusion of law No. 2 is as follows:

"Having found the fair market value of the equipment repossessed and sold on December 21, 1968, to have been $15,000.00, and further having found the equipment to have been sold by and purchased by the substituted plaintiff, The Klarin Company, for the sum of $2,000.00, which money was almost entirely used in expenses of sale, the court concludes that the sale which was ostensibly conducted under Section 1309.47 of the Ohio Revised Code was not made in a commercially reasonable manner as is required by Section 1309.50 (B) Ohio Revised Code and, therefore, under Section 1309.50(A) which provides in part, 'If the disposition has occurred, the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition, has a right to recover from the secured party any loss caused by failure to comply with the provisions of Section 1309.44 to 1309.50, inclusive, of the Revised Code.'"

The single assignment of error is that the finding that the reasonable market value of the repossessed equipment was $15,000 is manifestly against the weight of the evidence, and the conclusion that the sale was not conducted in a commercially reasonable manner is contrary to law.

Upon trial, defendant Kesterson testified on his own behalf and was asked:

"Q. Do you have an opinion as to the fair market value of the property which you transferred to Mr. Carlton at the time of its transfer to him?

"A. Yes

"Q. What is that opinion?

"A. Approximately $15,000.

"* * *

"Q. And subsequent to that time, did you see and have occasion to examine the equipment prior to its repossession by Northern Financial?

"A. Yes, I did.

"Q. And do you have an opinion, based on your experience in this business, as to the market value of the property at that time?

"Mr. Klaine: Objection. At what time?

"Mr. Wessel: As of November of 1968.

"A. I would say approximately the same as when we had—it was still in real good condition.

"Q. So what would be your opinion as to its value at that time?

"A. Probably, maybe a little less than $15,000."

Under cross-examination, Kesterson admitted he had no experience in inspecting such equipment as to value nor technical knowledge to evaluate this equipment.

The court, in ruling upon an objection lodged by plaintiff to Kesterson being permitted to give his opinion as to value, stated: "* * * if he has an opinion as to the fair and reasonable market value of this property at the time they assigned it over to somebody else, he may state that opinion."

The fair and reasonable market value of a chattel is the price which it will bring when it is offered for sale by one who desires, but who is not obliged, to sell it, and is bought by one who is under no necessity of buying it. See 16 Ohio Jurisprudence 2d 92, Damages, Section 73.

In order for a chattel to be said to have a market value, it is necessary that there shall be a market for such commodity, that is, a demand therefor and an ability from such demand to sell the same when a sale thereof is desired. Consequently, where there is no demand for a thing

and no ability to sell it, that thing cannot be said to have a market value. See 22 American Jurisprudence 2d 212, Damages, Section 146.

In the case at bar, the sale of the laundry equipment was advertised and all interested parties notified directly, yet none of the defendants nor any bidder appeared. The conclusion is inescapable; there was no market for the chattels and without a market they could have no fair market value. An owner, himself unwilling or unable to bid, cannot establish a value by giving his personal opinion of value to himself. As the ancient aphorism goes: "If wishes were horses, beggars would ride." Testimony that the chattels were still in plaintiff's warehouse and considered only as having value as scrap, buttresses the conclusion that no buyer existed.

The determination that the sale "was not made in a commercially reasonable manner" was, from the very language employed by the court in stating it, founded upon the finding of the reasonable market value of the equipment.

A secured party's right to dispose of collateral is limited by the obligation of good faith. R. C. 1301.09 provides:

"Every contract or duty within Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, imposes an oblgation of good faith in its performance or enforcement."

Nothing in the evidence suggests an overt breach of good faith. Can, then, it be inferred that the sale by plaintiff was commercially unreasonable, that is, in bad faith, because plaintiff bid on the chattels, when no other buyer appeared, at a price substantially less than the value placed upon them by an owner?

It seems apparent that the legislature anticipated such problem and to obviate the protest of the debtor provided by R. C. 1309.50 (B) that:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself

sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner.''

Defendants were properly notified of the sale and of the minimum bid to be accepted. Additionally, the plaintiff attempted to dispose of the chattels itself prior to the sale in what must be said to be an effort to minimize the deficiency. We must conclude that the determination that the equipment was not sold in a commercially reasonable manner manifestly is against the weight of the evidence and contrary to law.

The court below should have awarded judgment for the plaintiff in the amount prayed for and proved. Therefore, the judgment of the Court of Common Pleas is reversed and final judgment for the plaintiff as prayed for is rendered.

*Judgment reversed.*

HESS, P. J., and YOUNG, J., concur.