**DYNALECTRON CORPORATION, a corporation, Plaintiff,**

v.

**JACK RICHARDS AIRCRAFT CO., d/b/a Jack Richards Aircraft Company, Inc., and Jack Richards, Defendants.**

Civ. No. 71–102.

United States District Court,
W. D. Oklahoma,
Civil Division.

Feb. 4, 1972.

Leslie Conner, Jr., James M. Little, Oklahoma City, Okl., for plaintiff.

John E. Beaven, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This Opinion pertains to the Plaintiff's Fifth Cause of Action upon which a non-jury evidentiary hearing has been concluded. This cause of action involves a Lease Agreement between Plaintiff and the Defendant Jack Richards Aircraft Company, Inc., by which a Super-Constellation aircraft was leased by Plaintiff to said Defendant with said Defendant having an option to purchase the aircraft according to the terms of the Lease Agreement as later modified. The Defendant Jack Richards individually signed a Guaranty of the Lease Agreement before such modification. Plaintiff alleges that Defendants defaulted in paying monthly lease rentals on the aircraft, that the Plaintiff has terminated the Lease Agreement, has taken possession of the aircraft, has sold the same and now seeks judgment against the Defendants for a resulting deficiency.

The parties agree that three issues are involved in this cause of action as follows:

1. Whether the Lease Agreement is a security agreement as defined by 12A Okl.St.Ann. § 1–201(37),

2. If so, whether Plaintiff proceeded in a commercially reasonable manner in selling the aircraft as defined by 12A Okl.St.Ann. § 9–504(3) and § 9–507(2), and,

3. Whether an extension of time for making certain payments and a change in the terms of the option to purchase the aircraft served to exonerate Jack Richards individually as a guarantor by reason of his not consenting thereto within the meaning of 15 Okl.St.Ann. § 338.

As to Issue 1 the Lease Agreement, as modified, provides in pertinent part as follows:

"3(b) Lessee is granted the option during any month of this Agreement to purchase the aircraft described herein the purchase price to be the option price net of security deposit as set forth and in accordance with the terms of the payment schedule described in subparagraph (d) below."

"3(c) (3) In the event the Lessee exercises his option to purchase the Aircraft, as provided for in subparagraph (b) above, the security deposit shall be applied to the purchase price of the Aircraft."

"3(d) Rental payments shall be based upon the following schedule:

| Month | Rental | Option Price Net of Security Deposit |
|---|---|---|
| 1 | $ 3,031.23 | $75,000.00 |
| 2 | $ 3,013.52 | $72,500.00 |
| 3 | $ 2,995.81 | $70,000.00 |
| 4 | $ 2,978.10 | $67,500.00 |
| 5 | $ 2,960.40 | $65,000.00 |
| 6 | $ 2,942.69 | $62,500.00 |
| 7 | $ 2,924.98 | $60,000.00 |
| 8 | $ 2,907.27 | $57,500.00 |
| 9 | $ 2,889.57 | $55,000.00 |
| 10 | $ 2,871.86 | $52,500.00 |
| 11 | $ 2,854.15 | $50,000.00 |
| 12 | $ 2,836.44 | $47,500.00 |
| 13 | $ 2,818.74 | $45,000.00 |
| 14 | $ 2,801.03 | $42,500.00 |
| 15 | $ 2,783.32 | $40,000.00 |
| 16 | $ 2,765.61 | $37,500.00 |
| 17 | $ 2,747.91 | $35,000.00 |
| 18 | $ 2,730.20 | $32,500.00 |
| 19 | $ 2,712.49 | $30,000.00 |
| 20 | $ 2,694.78 | $27,500.00 |
| 21 | $ 2,677.08 | $25,000.00 |
| 22 | $ 2,659.37 | $22,500.00 |
| 23 | $ 2,641.66 | $20,000.00 |
| 24 | $ 2,623.95 | $17,500.00 |
| 25 | $ 2,606.25 | $15,000.00 |
| 26 | $ 2,588.54 | $12,500.00 |
| 27 | $ 2,570.83 | $10,000.00 |
| 28 | $ 2,553.13 | $ 7,500.00 |
| 29 | $ 2,535.42 | $ 5,000:00 |
| 30 | $ 2,517.71 | $ 2,517.71" |

12A Okl.St.Ann. § 1–201(37) provides in pertinent part:

"Unless a lease or consignment is intended as security, reservation of ti-

tle thereunder is not a 'security interest' . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

1 Anderson's Uniform Commercial Code (Rev.Ed.) § 1.201:112, § 1.201:113 and § 1.201:114 at page 145–147 states:

"A lease of personal property may be used by the parties as a security device.

. . . . . .

"Whether a lease is in fact a security interest is a question of the intent of the parties, which is to be determined on the facts of each case. There is authority, however, that this must be determined from the face of the lease alone when the lease purports to be complete.

. . . . . .

"The existence of an option to purchase is not controlling for the inclusion of an option to purchase does not of itself make the lease one intended for security. . . ."

"The presence of an option to purchase, when coupled with other evidence indicating that the transaction is in fact a sale, is significant in determining that the lease creates a security interest. A lease which provides that payments or parts of payments thereunder shall be applied to the payment of the purchase price creates a security interest since upon compliance with the terms of the lease the lessee shall become or has the option of becoming the owner of the property for no additional consideration or for a nominal payment. . . ."

The Court finds and concludes that the Lease Agreement is a security agreement. This is because the Court construes the Lease Agreement to provide, regarding the option to purchase the aircraft, that upon Defendant Jack Richards Aircraft Company, Inc. complying with the terms of the Lease Agreement as to monthly rentals it had the option to become the owner of the aircraft for no additional consideration. If Defendant made all prescribed monthly rental payments as set out in Paragraph 3(d) of the Lease Agreement there would be only $2,517.71 payable by Defendant to then become the owner of the aircraft under the option to purchase according to the third column of Paragraph 3(d) of the Lease Agreement. This figure the Court would determine to be only a nominal consideration in view of the total amount involved. But, as the Lease Agreement provides that the $10,000 Security Deposit (deposited with Plaintiff by Defendants at the start of the lease) shall be applied to the purchase price of the aircraft if the purchase option is exercised by Defendant, the Defendant would become the owner of the aircraft by exercising the purchase option at the twenty-seventh month when the option price of the aircraft according to Paragraph 3(d) of the Lease Agreement was then reduced to $10,000. Under this interpretation of the Lease Agreement as made by the Court there would be no additional consideration then payable to Defendant to become the owner of the aircraft. Under this interpretation of the terms and provisions of the Lease Agreement, as modified, the Court concludes under the foregoing authorities that the Lease Agreement must be considered to be a security agreement and as such is governed by those rules of law applicable to security agreements.

Finding the Lease Agreement to be a security agreement it then becomes necessary to consider Issue 2. Being a security agreement Plaintiff in disposing of the aircraft had the obligations to

do so in a commercially reasonable manner after reasonable notification to Defendants. 12A Okl.St.Ann. § 9–504(3).[1] There is no dispute about reasonable notification but the parties are in disagreement as to whether the Plaintiff sold the aircraft in a commercially reasonable manner.

On January 6, 1971 Plaintiff advised Defendant that it was retaking possession of the aircraft. On January 18, 1971 Plaintiff advised Defendant that it had a firm offer of $20,000 for the aircraft. On January 21, 1971 Plaintiff advised Defendant that it was terminating the Lease Agreement for default in payment of monthly rentals effective January 26, 1971 unless such default was cured prior to that date. On February 3, 1971 Plaintiff sold the aircraft to F & B Livestock Company for $22,500.00. The sale price fixed in the Lease Agreement, as modified, was $75,000. The Plaintiff did not advertise the aircraft for sale in any of the customary trade journals or publications. Plaintiff did not show the aircraft or do any work on the same to make it attractive for showing and sale. Plaintiff waited only 28 days after repossession and 8 days after termination of the lease to sell the aircraft. Plaintiff sold the aircraft to Defendant's sub-lessee and the entity from which Plaintiff secured possession of the aircraft. Plaintiff contacted only one of five or six operators who were in operations in which this type of aircraft was being utilized. Plaintiff contacted only one aircraft broker and did not place the aircraft with him for sale. All other contacts by Plaintiff were within its own organization. Plaintiff's agent in charge of the sale testified that he did not advertise the plane because he did not want to get involved with a broker's commission; that Plaintiff's Finance Committee reviewed the matter and instructed him to get rid of the aircraft. The testimony was in dispute about a depressed market condition at the time of sale due to Defendant's aircraft crash in Colorado in October of 1970 and subsequent grounding of certain aircraft by the Federal Aviation Authority. Defendants offered testimony that such depression only lasted during the months of October and November of 1970 and that the aircraft involved herein was not grounded when repossessed and sold but had a Certificate of Airworthiness and was capable of being flown. Defendants also produced evidence that it would cost only approximately $300 per month to maintain the aircraft pending timely efforts to properly sell the same which amount would have covered the cost of ground insurance, airport parking fees and engine run-up expense.

When reasonableness of sale is challenged the Plaintiff has the burden of proof respecting such issue. 4 Anderson Uniform Commercial Code (Rev. Ed.) § 9–504:13, page 614. 12A Okl.St. Ann. § 9–507(2) sets out some tests as to what is commercially reasonable.[2]

---

1. This Statute in pertinent part provides:
   "Disposition of the collateral may be by . . . private proceedings . . . Sale . . . may be . . . at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . . [R]easonable notification of the time after which any private sale . . . is to be made shall be sent by the secured party to the debtor . . . ."

2. This Statute provides in pertinent part:
   "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . . ."
   The Oklahoma Commentator states with respect to 12A Okl.St.Ann. § 9–504(3) as follows:
   "The sale . . . must be 'commercially reasonable.' This is a new

■ The ultimate question of commercial reasonableness is one of law. See Carter v. Ryburn Ford Sales, Inc., 248 Ark. 236, 451 S.W.2d 199 (1970). However, time and method may involve questions of fact. California Airmotive Corporation v. Jones, 415 F.2d 554 (Sixth Cir. 1969). The relevant test has been set out in Old Colony Trust Company v. Penrose Industries Corp., 280 F. Supp. 698 (D.C.Pa.1968), aff'd 3 Cir., 398 F.2d 310. Our Circuit has expressed itself in this respect in A to Z Rental Inc. v. Wilson, 413 F.2d 899 (Tenth Cir. 1969) in the following terms:

> "Where a security holder, proceeding as permitted by the security instrument, secures possession of the security and sells it at a private forced sale, he should exercise due diligence to get the best price obtainable at such a sale, and if he fails so to do and sells the security for less than he could have obtained by the exercise of such diligence, he is liable to the debtor for the difference between the price obtained and the price he could have obtained by the exercise of such diligence."

■ In the circumstances of this case, the Court finds and concludes the Plaintiff did not sell the aircraft in a commercially reasonable manner. Plaintiff did not advertise or otherwise make normal and reasonable contacts within the industry to dispose of the aircraft. Rather, the Court believes that Plaintiff merely took the quick and easy way out by selling the aircraft to the same people who had been using it.

■ As the Court finds that the sale of the aircraft by the Plaintiff was not accomplished in a commercially reasonable manner, the Plaintiff is not entitled to a deficiency judgment against either Defendant. 4 Anderson Uniform Commercial Code § 9–504:28 states, "The creditor is not entitled to a deficiency judgment unless the sale of the collateral was conducted in a manner which was commercially reasonable." Thus, it may be unnecessary for the Court to rule on Issue 3. However, if for any reason the Court has erred and Issue 3 becomes pertinent the Court will rule on this Issue.

■ Jack Richards as an individual executed a Guaranty of the Lease Agreement entered into between Plaintiff and Defendant Jack Richards Aircraft Company, Inc. This Lease Agreement was later modified. The Modification of Lease plainly altered the Lease Agreement. Plaintiff prepared the Modification of Lease providing therein only for it to be executed by the Defendant Jack Richards Aircraft Company, Inc. Jack Richards signed the Modification of Lease for the company. He did not sign the same individually. Without dispute the evidence revealed that Jack Richards as an individual did not consent to the Modification of Lease either verbally or in writing.

15 Okl.St.Ann. § 338 provides:

> "Exoneration of guarantor
>
> A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended. R.L.1910, § 1043."

The Court finds and concludes that the Guarantor, Jack Richards individually, has been exonerated by the Lease Agreement being altered by the Plaintiff and Defendant Jack Richards Air-

---

approach. No effort is made to set out a fixed procedure for sale to apply in every case. There is no one procedure which is correct for the sale of every different kind of property. The intention is to permit almost the same

flexibility in the foreclosure sale as would be the case where a businessman sought to sell or dispose of the same kind of property in the ordinary course of business."

craft Company, Inc., the contracting parties to the Lease Agreement, without the consent of the Guarantor, Jack Richards individually either verbally or in writing.

Counsel for Defendants will prepare an appropriate judgment on the Fifth Cause of Action in conformity with the foregoing and obtain approval as to the form by counsel for Plaintiff. However, the Court will not file said judgment pending final determination of the other four causes of action in the case, it being the intention of the Court to withhold all judgments herein on all causes of action until one judgment covering all five causes of action can be entered at the same time to facilitate any desired appeals in the case.