535 P.2d 1077

**CLARK LEASING CORPORATION, a Delaware Corporation, Plaintiff-Appellant,**

v.

**WHITE SANDS FOREST PRODUCTS, INC.,** a New Mexico Corporation, formerly known as La Luz Lumber Company, Defendant-Appellee.

**No. 9977.**

Supreme Court of New Mexico.

May 7, 1975.

Shipley, Durrett, Conway & Sandenaw, Thomas A. Sandenaw, Alamogordo, for plaintiff-appellant.

S. Thomas Overstreet, Alamogordo, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

Plaintiff-appellant (Clark) appeals a judgment on a jury verdict which denied it recovery of a deficiency judgment sought under Article Nine of the New Mexico Uniform Commercial Code, Sections 50A–9–501 to 507, N.M.S.A.1953 (hereinafter §§ 9–501 to 507). In 1969, defendant-appellee (White Sands) purchased certain logging equipment (skidders) from Clark's contract assignor under a conditional sales contract. After making certain payments, White Sands defaulted. In September, 1970, appellant repossessed the equipment at White Sands' request and, some nine months later, conducted a public sale. White Sands was given notice of the sale as required under § 9–504(3). The claimed deficiency owing after allowing all just credits and offsets was $20,069.25. This figure was not in dispute.

Clark first argues that the court erred as a matter of law in allowing the defense of accord and satisfaction to go to the jury. We are concerned only with common law accord and satisfaction. See UCC § 1–103. Section 9–505(2) is not involved since none of the procedures there provided were utilized.

Based upon the pleadings and statements of counsel, we gather that it was White Sands' theory that Clark agreed to accept delivery of the skidders in full settlement of the former's indebtedness. Upon trial, there was not a shred of evidence of an accord, but that issue is raised for the first time here. Clark did assert at every stage of the proceedings, however, that there could be no accord because the debt was liquidated, its amount not being in dispute. Objection was made to the instruction submitting the issue to the jury on that ground.

An accord is nothing more nor less than a contract of a specialized type. It is a new contract and must be supported by a new consideration. In the case of a liquidated claim or demand, some consideration for the asserted release of the unpaid balance, apart from the payment of a lesser sum, must be found to support an alleged accord. Yates v. Ferguson, 81 N.M. 613, 471 P.2d 183 (1970). For that reason, our precedents hold that one of the prerequisites of a valid accord is that the claim or demand involved must be unliquidated, at least in the absence of a new and independent consideration. Frazier v. Ray, 29 N.M. 121, 219 P. 492 (1923). The court there said, by way of explanation:

> "Where no dispute exists with regard to the sum due, no consideration exists to support the agreement of the creditor to receive less than the agreed sum, or to release the debtor from the unpaid portion thereof." 29 N.M. at 123, 219 P. at 493.

See also Miller v. Prince Street Elevator Co., 41 N.M. 330, 68 P.2d 663 (1937); Buel v. Kansas City Life Ins. Co., 32 N.M. 34, 250 P. 635 (1926).

White Sands argues that New Mexico recognizes the common law precept that there can be an accord and satisfaction of a liquidated undisputed claim when there is additional consideration given, citing Yates v. Ferguson, 81 N.M. 613, 471 P.2d 183 (1970). It asserts that Clark was allowed to repossess the skidders with the understanding it would be in full settlement of the existing indebtedness under the contract and that this was sufficient new consideration. We are not persuaded, for the alleged understanding

> " * * * shows nothing more than the attempted unilateral imposition without consideration of a condition contrary to the terms of the original contract recognizing the immediate right of repossession upon default. The defendant had already legally obligated himself to

surrender possession upon default, and he agreed to do nothing more at the time of repossession. 'An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another.' [Citation omitted.]" Barnes v. Reliable Tractor Company, 117 Ga.App. 777, 778, 161 S.E.2d 918, 919 (1968).

Moreover, under § 9–503, Clark had the statutory right to self-help repossession if it could be done without "breach of the peace."

White Sands also argues sufficiency of a new consideration by its giving up the right under both the contract and § 9–504(2) to any surplus at resale of the equipment. But there is not the slightest intimation in the evidence that the alleged accord and satisfaction included White Sands relinquishing this contractual and statutory right.

For the reasons stated, accord and satisfaction was an insufficient defense as a matter of law. It was a false issue and it was reversible error to instruct on that theory. Reed v. Styron, 69 N.M. 262, 365 P.2d 912 (1961); Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969). Additional points raised by appellant require resolution since a new trial will be required.

More serious questions center on the requirement of § 9–504(3) that sale or other disposition of collateral by a secured party must be accomplished in a "commercially reasonable" manner. Issues are presented as to which party bears the burden of proving that the manner of sale was, or was not, commercially reasonable, how commercial reasonableness is to be proven, and the effect of failure to dispose of collateral in that estimable, if elusive, fashion.

Sections 9–504(1) & (3) provide a creditor broad choices for disposing of repossessed collateral.[1] But § 9–504(3) also

---

1. Under § 9–504(1) he may " * * * sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." § 9–504(3) provides that: "Disposition of the collateral may be by

imposes two requirements upon a reselling creditor. First, he must send the debtor reasonable notification of impending sale, which Clark did in this case. Second, every aspect of the sale, including the "method, manner, time, place and terms", must be "commercially reasonable." These requirements place upon the creditor the good faith duty to the debtor to use reasonable means to see that a reasonable price is received for the collateral. See Vic Hansen & Sons, Inc. v. Crowley, 57 Wis.2d 106, 203 N.W.2d 728 (1973); 2 G. Gilmore, Security Interests in Personal Property, § 44.5 at 1234 (1965); UCC § 1–203. As noted by Michigan Law Professor James J. White, the importance of a commercially reasonable sale

> " * * * lies in the fact that the amount of the deficiency judgment will be inversely proportional to the sales price; if the price is high, the amount of the judgment will be low, and vice versa. The 'method, manner, time, place and terms' tests are really proxies for 'insufficient price,' and their importance lies almost exclusively in the extent they protect against an unfairly low price." J. White & R. Summers, Uniform Commercial Code § 26–9 at 982 (1972).

We first consider the burden of proof, confining our comments to actions by secured creditors for deficiencies, as distinguished from actions, counterclaims or setoffs asserted by debtors. See Vic Hansen & Sons, Inc. v. Crowley, supra at 113 n. 4, 203 N.W.2d at 732 n. 4; Universal C.I.T. Credit Co. v. Rone, 248 Ark. 665, 668, 453 S.W.2d 37, 39 (1970); § 9–507(1).

In this case, both parties undertook the burden of proof, Clark in its opening statement and White Sands by pleading a want of commercial reasonableness as an af-

firmative defense. Each now stoutly asserts that the burden properly belongs to the other. We do not attach much significance to this state of the record. The case must be retried in any event so it might as well be done correctly.

■■ It is scarcely a revelation to say that a plaintiff normally has the burden of proving his case. In light of the specific requirement of § 9–504(3) as to commercial reasonableness, it seems clear that a creditor, when suing for a deficiency, should allege and prove that disposition of the collateral was conducted in compliance with that statute. The issue would be formulated by a denial. While asserting that the debtor has the burden, Clark fails to cite a supporting case. We are of the opinion that in a case such as this, the creditor must allege and, unless admitted, prove that the sale was commercially reasonable. Vic Hansen & Sons, Inc. v. Crowley, supra; First National Bank of Bellevue v. Rose, 188 Neb. 362, 196 N.W.2d 507 (1972); Universal C.I.T. Credit Co. v. Rone, supra; Mallicoat v. Volunteer Finance & Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347 (1966). Of course, once a creditor has made a prima facie case indicating a commercially reasonable sale, the debtor may be required to elicit some evidence of commercial unreasonableness to avoid a directed verdict on the issue. But when this is done, it becomes a question for the trier of the facts. See Farmers Equipment Company v. Miller, 252 Ark. 1092, 482 S.W.2d 805 (1972).

■ The parties also differ as to what factors are relevant in determining commercial reasonableness. Obviously, each case will turn on its particular facts but recent decisions provide instructive reading.[2] Generally, evidence as to every as-

---

public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms * * *."

2. See, e. g., California Airmotive Corporation v. Jones, 415 F.2d 554 (6th Cir. 1969); Dynalectron Corporation v. Jack Richards

Aircraft Co., 337 F.Supp. 659 (W.D.Okl. 1972); Mercantile Financial Corp. v. Miller, 292 F.Supp. 797 (E.D.Pa.1968); Farmers Equipment Company v. Miller, supra; Harris v. Bower, 266 Md. 579, 295 A.2d 870 (1972); First National Bank of Bellevue v. Rose, supra; Northern Financial Corporation v. Kesterson, 31 Ohio App.2d 256, 60 Ohio

pect of the sale including the amount of advertising done, normal commercial practices in disposing of particular collateral, the length of time elapsing between repossession and resale, whether deterioration of the collateral has occurred, the number of persons contacted concerning the sale, and even the price obtained, is pertinent. See Beneficial Finance Co. of Black Hawk County v. Reed, 212 N.W.2d 454 (Iowa 1973); Farmers Equipment Company v. Miller, supra. In this case, evidence of this sort was adduced by both parties and, under proper instructions, it would probably have supported a verdict for either side. We turn to a consideration of whether the instructions were correct.

Clark's major challenge squarely raises, for the first time in New Mexico, the question whether or not a secured creditor is absolutely precluded from recovering a deficiency judgment under the UCC if he fails to dispose of repossessed collateral as required under § 9–504(3).[3] The trial court instructed the jury, in effect, that if the sale was commercially unreasonable, Clark was automatically denied its claim for a deficiency. Challenging the instruction, Clark argues that it was error not to instruct, as it requested, that even if the jury believed the sale was not commercially reasonable, it nevertheless had the right to recover the claimed deficiency less any loss occasioned by its failure to sell in a commercially reasonable manner.

Decisions regarding the remedy of a debtor suffering from a sale of collateral in violation of the Uniform Commercial Code have, ironically, resulted in non-uniform interpretations of its remedial provisions. The apparent majority hold that the failure of the secured party to comply with his duties under § 9–504(3) bars recovery of a deficiency judgment. See Leasing Associates, Inc. v. Slaughter & Son, Inc., 450 F.2d 174 (8th Cir. 1971); Skeels v. Universal C.I.T. Credit Corporation, 222 F. Supp. 696 (W.D.Pa.1963) vacated on other grounds, 335 F.2d 846 (3d Cir. 1964); Beneficial Finance Co. of Black Hawk County v. Reed, supra; Vic Hansen & Sons, Inc. v. Crowley, supra; Turk v. St. Petersburg Bank and Trust Company, Fla.App., 281 So.2d 534 (1973); Camden National Bank v. St. Clair, Me., 309 A.2d 329 (1973); Atlas Thrift Company v. Horan, 27 Cal.App. 3d 999, 104 Cal.Rptr. 315 (1972); Aimonetto v. Keepes, Wyo., 501 P.2d 1017 (1972); Leasco Data Process. Equip. Corp. v. Atlas Shirt Co., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (Civ.Ct.N.Y.1971); Braswell v. American National Bank, 117 Ga.App. 699, 161 S.E.2d 420 (1968).[4] We consider this rule repugnant to the spirit of the UCC. The complete denial of a deficiency smacks of the punitive and is directly contrary to Article Nine's underlying theme of commercial reasonableness. "If the secured party has reimbursed the debtor for any losses incurred by improper sale, he has approximated the commercially reasonable sale. Thus, he should be allowed to receive the money which would have been due if the sale had been commercially reasonable."

Op.2d 412, 287 N.E.2d 923 (1971); Goodin v. Farmers Tractor & Equipment Company, 249 Ark. 30, 458 S.W.2d 419 (1970).

3. The question has been eliminated by the Legislature where the collateral involved is consumer goods. No deficiency is allowed under any circumstances. § 50A–9–504(2), N.M.S.A.1953 (Supp.1971).

4. Several jurisdictions have placed New Mexico in the corner of absolute preclusion of a deficiency judgment for failure to give proper notice citing Foundation Discounts, Inc. v. Serna, 81 N.M. 474, 468 P.2d 875 (1970). See Community Manage. Ass'n of Colorado SP. v. Tousley, 32 Colo.App. 33, 505 P.2d 1314 (1973); Beneficial Finance Co. of

Black Hawk County v. Reed, supra; Grant County Tractor Co. v. Nuss, 6 Wash.App. 866, 496 P.2d 966 (1972); Atlas Thrift Company v. Horan, supra; Leasco Data Process. Equip. Corp. v. Atlas Shirt Co., supra. Serna held that a creditors' failure to give notice required under a dealer agreement providing for repurchases by defendant precluded suit for a deficiency after resale. Then, in dictum, it indicated that even if the UCC applied, (a question expressly avoided), the creditors' failure to comply with Section 9–504(3) would have denied him "the remedy provided by the Code." 81 N.M. at 476, 468 P.2d at 877. We decline to adopt this dictum as New Mexico law.

Minetz, "May a 'Wrongdoer' Recover a Deficiency Judgment, or is Section 9–507(1) a Debtors Exclusive Remedy?", 6 UCC L.J. 344 at 363 (1974).

We agree with those courts that hold a secured party's failure to comply with § 9–504(3) does not result in a forfeiture of the right to a deficiency. See Wirth v. Heavey, 508 S.W.2d 263 (Mo.App.1974); Community Manage, Ass'n of Colorado SP. v. Tousley, 32 Colo.App. 33, 505 P.2d 1314 (1973); Grant County Tractor Co. v. Nuss, 6 Wash.App. 866, 496 P.2d 966 (1972); Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382, 276 A.2d 402 (1971); Universal C.I.T. Credit Co. v. Rone, supra; T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162 (1969); Weaver v. O'Meara Motor Company, Alaska, 452 P.2d 87 (1969). Under these decisions, where the value of the collateral is at issue, there is a presumption that the value of the repossessed collateral at resale is equal to the value of the outstanding debt. Universal C.I.T. Credit Co. v. Rone; T & W Ice Cream, Inc. v. Carriage Barn, Inc. Where the sale is conducted in accordance with § 9–504(3) the sum received at sale is evidence of the market value. But if the sale is not conducted according to the Code, the amount received is not evidence of the market value of the collateral. The secured party has the burden of proving the market value by other evidence. Community Manage. Ass'n of Colorado SP. v. Tousley; Universal C.I.T. Credit Co. v. Rone. We believe simple considerations of fair play mandate the adoption of this rule for New Mexico. Consequently, the trial court erred in giving the mentioned jury instruction insofar as it denied the right to any deficiency judgment if Clark failed to prove a commercially reasonable sale.

Clark also contends that it was entitled to a directed verdict on the issue of default of the conditional sales contract. Terse as this statement may seem, it presents a mare's nest of legal problems, stemming largely from the manner in which the question was presented to the trial court. Normally, such motions are not directed to bits and pieces of lawsuits. It was undisputed that White Sands was in default in its payments. Default was, in effect, stipulated by agreeing to the payments contracted and payments made, and White Sands' witness admitted default. Yet Clark did not object to the instructions submitting the issue to the jury or request an instruction that White Sands' default was established or otherwise removing the issue of default from the jury's consideration. Inasmuch as the new trial will be restricted in its scope to certain issues which will not include default, no useful purpose would be served by further discussion of this claim.

The judgment of the district court is reversed. The case is remanded to the trial court with directions to set aside its judgment and to grant a new trial to be conducted in a manner consistent with the views we have expressed in this opinion. The issue upon retrial will be whether or not the disposition of the collateral was conducted in a commercially reasonable manner and, if not, the amount by which the deficiency should be diminished.

It is so ordered.

OMAN and MARTINEZ, JJ., concur.