408 A.2d 930.

ASSOCIATES CAPITAL SERVICES CORPORATION
*vs.* RONALD L. RICCARDI.

NOVEMBER 30, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This advisory opinion to the United States District Court for the District of Rhode Island is rendered pursuant to the pertinent provisions of Rule 6 of the rules of this court. The above-entitled action was originally brought by the plaintiff, Associates Capital Services Corporation (Associates) against the defendant, Ronald L. Riccardi (Riccardi), in the District Court as a diversity action under 28 U.S.C. §1332. Associates sought to recover a deficiency judgment for $325,045.27 pursuant to G.L. 1956 (1969 Reenactment) §6A-9-504(2), the Rhode Island counterpart of the Uniform Commercial Code (Code).

The facts giving rise to this litigation are uncontradicted. In 1972 Riccardi entered into two separate agreements for the lease-purchase of specialized electronics components for use in a two-way motor-vehicle communications system. The leases called for total rental payments amounting to $377,989. Riccardi made a $15,001 down payment, leaving a balance due of $362,988. He executed security agreements with Motorola Communications and Electronics, Inc. (Motorola) and pledged the equipment as collateral. Motorola subsequently assigned its interests in the security agreements and the leases to Associates.

In 1973, after making rental payments of $18,149.40, Riccardi defaulted under the terms of both agreements. Associates thereupon made demand for the total rental balance then due, to wit, $344,838.60. When its demands were unmet, Associates repossessed most of the collateral and resold it at two public auction sales that realized a total of $32,775. After crediting Riccardi's account with an additional $875 for equipment repossessed but not sold, Associates sued Riccardi in the District Court, seeking a deficiency judgment of $325,045.27. The District Court concluded that the sales were not conducted in a "commercially reasonable manner,"[1] but the court was unsure whether judgment could be entered for the creditor once it had ruled that the creditor failed to dispose of the collateral in a commercially reasonable manner. *Associates Capital Services Corp.* v. *Riccardi*, 454 F. Supp. 832, 834 (D.R.I. 1978).

As was noted in *Rhode Island Hospital Trust National Bank* v. *National Health Foundation*, 119 R.I. 823, 835, 384 A.2d 301, 307 n.2 (1978) (Kelleher, J., dissenting), courts have expressed three different views about the effect of a creditor's noncompliance with the mandate of §6A-9-504 that the disposition of collateral be made in a commercially reasonable manner. These divergent holdings have been synthesized by the District Court into the following certified question:

> "If a secured creditor fails to make a commercially reasonable disposition of collateral in compliance with

---

[1] Associates' sales came under scrutiny because of G.L. 1956 (1969 Reenactment) §6A-9-504(3), which in its pertinent part states:

"Disposition of the collateral may be by public or private proceedings * * * and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * *."

the provisions of R.I. Gen.Laws §6A-9-504(3), 1969,

1. is such misconduct an absolute bar to a deficiency judgment; or

2. may the secured creditor recover a deficiency judgment subject to the debtor's right under §9-507(1) to recoup whatever damages are the proximate result of such wrongdoing; or

3. can one presume that the collateral had a fair market value equivalent to the amount of debt, and no deficiency will be permitted unless the creditor produces evidence to prove the reasonable amount that the collateral would have sold for at a proper sale; or

4. will the effect of such misconduct be determined according to a standard different from the three lines of authority referred to in questions 1 - 3?"

Before we begin our response to the inquiry posed to us, we acknowledge the assistance rendered the court by briefs filed in behalf of the litigants and the amici briefs filed in behalf of the various lending institutions doing business in this state.

We shall first discuss the notice requirements of §6A-9-504(3), a factor that one amicus suggests is a separate requirement for commercial reasonableness, not merely an aspect of it, and an important fact not set forth by the District Court either in its certified question or opinion. However, another amicus intimates that Associates did notify Riccardi but failed to advertise the sale sufficiently so that an inadequate number of prospective buyers were present at the sale.

In this context, we are persuaded by the reasoning of the Court of Appeals for the Sixth Circuit when it disallowed an attempt by the United States government to limit applicability of the defense of commercial unreasonableness only to instances in which the secured party failed to give the debtor the requisite presale notice. In rejecting this contention, the Court of Appeals found the notice distinction "without legal

significance," and decided instead that the "crucial question" concerned "commercial reasonableness," whether or not "the factual context in which the issue is presented focuses upon proper notification prior to sale or the manner in which the sale is actually consummated." *United States* v. *Willis*, 593 F.2d 247, 256 (6th Cir. 1979).

Having decided that notice or the lack thereof is not a dispositive issue in the present controversy, we now turn to the certified question. First is the question of whether a creditor's failure to conduct the sale of collateral in a commercially reasonable manner constitutes an absolute bar to recovering any deficiency. Courts adhering to the absolute-bar rule have held that compliance with §9-504(3) requirements of notice and commercial reasonableness are conditions precedent to recovery of a deficiency. E.g., *Dynalectron Corp.* v. *Jack Richards Aircraft Co.*, 337 F. Supp. 659 (W.D. Okla. 1972); *Atlas Thrift Co.* v. *Horan*, 27 Cal. App. 3d 999, 104 Cal. Rptr. 315 (1972); *Camden National Bank* v. *St. Clair*, 309 A.2d 329 (Me. 1973).

This antideficiency rationale is difficult to support in light of §6A-9-504(2) and its unequivocal statement that "[i]f the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, *the debtor is liable for any deficiency.*" (Emphasis added.)

Furthermore, adoption of the antideficiency rule appears antithetical to the Code's pervasive spirit of fairness. In particular, the absolute-bar rule seemingly flies in the face of the Code's directive in Article One that:

> "The remedies provided by title 6A shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but *neither consequential or special nor penal damages may be had* except as specifically provided in title 6A or by other rule of law." (Emphasis added.) G.L. 1956 (1969 Reenactment) §6A-1-106(1).

Other jurisdictions have rejected the absolute-bar rule on the basis of the Code's prohibition against penal damages. *Barbour* v. *United States*, 562 F.2d 19, 21 (10th Cir. 1977); *United States* v. *Whitehouse Plastics*, 501 F.2d 692, 696 (5th Cir. 1974), *cert. denied sub nom. Baker* v. *United States*, 421 U.S. 912, 95 S. Ct. 1566, 43 L. Ed. 2d 777 (1975); *Kobuk Engineering & Contracting Services, Inc.* v. *Superior Tank & Construction Co-Alaska, Inc.*, 568 P.2d 1007, 1013 (Alas. 1977); *Clark Leasing Corp.* v. *White Sands Forest Products, Inc.*, 87 N.M. 451, 455, 535 P.2d 1077, 1081 (1975). We note that the New York court in *Leasco Computer, Inc.* v. *Sheridan Industries, Inc.*, 82 Misc. 2d 897, 371 N.Y.S.2d 531 (Civ. Ct. N.Y. 1975), repudiated its earier antideficiency decision, *Leasco Data Processing Equipment Corp.* v. *Atlas Shirt Co.*, 66 Misc. 2d 1089, 323 N.Y.S.2d 13 (Civ. Ct. N.Y. 1971), and instead espoused the view that the debtor sustained the burden, under §9-507(1), of proving the actual damage flowing from the secured party's noncompliance. These damages would thereupon be deducted from the deficiency. 82 Misc. 2d at 900-02, 371 N.Y.S.2d at 534-535.

The New York decision in *Sheridan* leads us to a consideration of the second suggested solution: whether we would adopt the view that the secured creditor could recover a deficiency subject to the debtor's right to recoup damages under §6A-9-507(1).[2] *See, e.g., Barbour* v. *United States*, 562 F.2d 19 (10th Cir. 1977); *Cornett* v. *White Motor Corp.*, 190 Neb. 496, 209 N.W.2d 341 (1973); *Grant County Tractor Co.* v. *Nuss*, 6 Wash. App. 866, 496 P.2d 966 (1972). We are displeased with the recoupment approach because it places the burden of proving loss upon the debtor rather than on the

---

[2]In its relevant portions, G.L. 1956 (1969 Reenactment) §6A-9-507(1) provides:

"If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by the failure to comply with the provisions of this part."

creditor, thereby contravening the usual rule that the misbehaving party should sustain the burden of proof.

Upon reflection, we believe that neither the arbitrary denial of a deficiency judgment nor the allowance of a deficiency subject to the debtor's right of recoupment affords an entirely equitable result. Consequently, we now consider an intermediate approach as set forth in the third suggested solution: presuming the fair market value of the collateral at the time of resale to be equivalent to the amount of the outstanding debt. This view places upon the secured party, rather than upon the debtor, the burden of rebutting the presumption. *E.g., United States* v. *Whitehouse Plastics,* 501 F.2d at 695, 696; *Kobuk Engineering & Contracting Services, Inc.* v. *Superior Tank & Construction Co-Alaska,* 568 P.2d 1007, 1013-14 (Alas. 1977); *Universal C.I.T. Credit Co.* v. *Rone,* 248 Ark. 665, 669, 453 S.W.2d 37, 39 (1970); *Savings Bank of New Britain* v. *Booze,* 34 Conn. Supp. 632, 637, 382 A.2d 226, 228 (Conn. Super 1977); *Clark Leasing Corp.* v. *White Sands Forest Products, Inc.,* 87 N.M. 451, 456, 535 P.2d 1077, 1082 (1975). Before recovery can be afforded to a secured creditor who failed to dispose of collateral in a commercially reasonable manner, "the secured party must 1) establish the fair market value of the collateral and, thereby, 2) rebut the presumption that the value of the collateral equalled the indebtedness secured." *United States* v. *Willis,* 593 F.2d at 260.

Our analysis of the issue presented by the District Court's request further reveals that some jurisdictions appear to articulate a rebuttable-presumption rule in combination with the recoupment or offset provisions of §9-507(1). *See, Associates Financial Services Co.* v. *DiMarco,* 383 A.2d 296, 302 (Del. Super. 1978); *Hodges* v. *Norton,* 29 N.C. App. 193, 223 S.E.2d 848 (1976). To us, these precedents appear to chart a dangerous course because of the possible confusion that may result when determining which standard applies.

We find the reasoning of the court in *Kobuk Engineering & Contracting Services, Inc.* v. *Superior Tank & Construc-*

*tion Co-Alaska, Inc.,* 568 P.2d 1007 (Alas. 1977), most persuasive. There, the factual context is similar to that presented by Associates and Riccardi. In *Kobuk,* an equipment seller sued the buyer for a deficiency in the amount of the unpaid debt minus the money recovered through resale of the collateral. Although the seller notified the buyer of the public sale, it made no effort, other than to post notices on selected courthouse and post-office bulletin boards, to advertise the sale. The trial court, finding the sale to be commercially reasonable, held that the creditor was entitled to the deficiency. The Supreme Court of Alaska, however, reversed and then considered the effect such a sale would have upon a suit for deficiency. The court said:

> "Where the collateral has been sold in a sale that does not comply with the provisions of the UCC, there is a rebuttable presumption that the fair and reasonable value of the collateral is at least equal to the amount of the outstanding debt. In order to overcome that presumption, the secured party has the burden of either (1) obtaining a fair and reasonable appraisal at or near the time of repossession, or (2) producing convincing evidence of the value of the collateral. In order to meet the latter burden, the secured creditor is required to bring forward proof of the condition of the collateral and the usual price of items of like condition."

*Id.* at 1013-14.

Applying the foregoing principles to the issue presented, we are firmly convinced that simple considerations of common sense and fair play mandate the adoption of the rebuttable-presumption rule in Rhode Island. Accordingly, we believe that as a consequence of a commercially unreasonable resale of collateral, a presumption arises that the fair market value of the collateral at the time of resale equals the amount of the outstanding debt. Consequently, the secured party, although not precluded from recovering a deficiency judgment, must assume the burden of proving that the fair market value of the collateral was less than its presumed value. In

regard to the manner in which a secured party may prove fair market value of the secured assets, Rhode Island courts should consider evidence indicating the "reasonable amount that the collateral would have sold for at a proper sale," the criterion included in the third suggested solution, through the use, for example, of the various factors alluded to in *Kobuk.*

In opting for the presumptive view, we have rejected a suggestion apparently put forth by Associates as a result of the final facet of the District Court inquiry when it asked us if the effect of Associates' "misconduct" would be determined by an approach different from the three that we have discussed in this opinion. Associates' approach would have the creditor institute a replevin action that, according to Associates, would "force" the debtor to come forward with his objections instead of waiting until the "eleventh hour" before challenging the sale. This supposed solution is actually no solution. An action in replevin merely adjudicates who has the superior right to possession of goods. If a plaintiff seeking replevin fails to prevail, the goods are restored to the defendant. Here, Riccardi concedes Associates' right to repossess the collateral. What is disputed is Associates' failure to do what it was supposed to do once it took possession of the electronics equipment. Consequently, replevin offers no solution to the problem posed by the District Court.

In conclusion, the members of this court give an affirmative response to the District Court's third alternative inquiry and negative responses to each of the other alternatives.

*Leo T. Connors, Thomas C. Mullaney, Jr.,* for plaintiff.

*Sydney I. Resnick,* for defendant. *Edwards & Angell, Edward F. Hindle, Andrew J. Chlebus, Gail E. McGann,* for Amicus Curiae, Industrial National Bank of Rhode Island, Old Stone Bank and Woonsocket Institution for Savings. *Pucci & Goldin, Thomas D. Pucci,* for Amicus Curiae, Rhode Island Bankers Association.