In the Matter of APPALACHIAN POCAHONTAS COAL COMPANY, INC., Debtor.

LEASING SERVICE CORPORATION, Plaintiff,

v.

APPALACHIAN POCAHONTAS COAL COMPANY, Defendant and Third-Party Plaintiff,

v.

FAIRCHILD, INC., Third-Party Defendant.

Civ. A. No. 81–5088.

United States District Court, S.D. West Virginia, Beckley Division.

March 28, 1983.

Stephen A. Weber and Michael T. Chaney, Charleston, W.Va., for plaintiff and third-party defendant.

Leonard M. Klehr, Philadelphia, Pa., Milton S. Koslow, Charleston, W.Va., for debtor/defendant and third-party plaintiff.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

### I.

Leasing Service Corporation appeals from an order of the bankruptcy court denying it the right to recover a deficiency judgment resulting from the sale of repossessed mining equipment, holding that the public sale of the equipment had been commercially unreasonable under the provisions of the Uniform Commercial Code and applicable case law.

In March, 1977, Fairchild, Inc., as lessor, entered into an agreement with Appalachian Pocahontas Coal Company, as lessee, for the lease of certain mining equipment. Fairchild, Inc., assigned its rights in the lease to Leasing Service Corporation. The lease also constituted a security agreement. Appalachian Pocahontas Coal Company defaulted on the agreement and subsequently filed a Chapter XI petition in bankruptcy. After default by Appalachian but prior to the filing of the bankruptcy petition, Leasing Service Corporation repossessed the equipment. Leasing Service Corporation obtained the proper authorization from the bankruptcy court and sold the equipment at a sale conducted on October 17, 1980.

The parties executed a stipulation regarding the sale of the equipment which incorporated provisions addressing four basic aspects of the sale. The court entered the stipulation as an order. The three issues raised on appeal concern:

(1) Whether the stipulation/order constituted judicial approval under W.Va.Code § 46–9–507(2) such that a sale in compliance with the order is to be conclusively deemed commercially reasonable;

(2) If not, whether the sale nevertheless was commercially reasonable; and

(3) If not, whether Leasing Service Corporation is precluded from recovering its deficiency judgment.

### II.

■ For the reasons stated in the opinion of the bankruptcy judge, the court affirms the bankruptcy court's holding on the initial issue that the stipulation/order did not constitute judicial approval giving rise to a conclusive presumption of commercial reasonableness. As the court below indicates, it is plain enough that it did not intend the stipulation/order to function as judicial approval under W.Va.Code § 46–9–507(2). Indeed, there is no indication in the order to suggest otherwise. No provision recites that it was entered pursuant to that statutory section or that it was to serve as an advance judicial approval. Rather, the order merely set out some of the guidelines for the sale without surrendering the court's jurisdiction to review the circumstances of the sale once it was held.

In any event, compliance with the express and necessarily implied provisions of the stipulation/order was not observed. A necessarily implied provision is that the sale must be conducted at the time and place advertised. An express provision of the stipulation/order was that the collateral be sold "first in individual units, and then on a lot basis." As is next developed, Leasing Service Corporation failed to comply with either provision.

### III.

■ A closer question is that respecting the propriety of the circumstances of the sale. After reviewing the evidence in the case and the applicable law, and for the reasons stated in the bankruptcy court's opinion, this court affirms that portion of the opinion respecting the commercial unreasonableness of the sale wherein it focuses on the defective notice,[1] which defect

---

1. The court notes that Leasing Service Corporation urges it to consider the unrefuted testimony of Mr. Bagby that a list of repossessed equipment, which included the subject equipment, was circulated nationally and internationally to between four and six thousand cus-

was aggravated by the fact that the first local newspaper advertisement of the sale did not appear until three days before the sale, and the questionable manner in which the sale was conducted.

Whether tested by the Uniform Commercial Code standards of commercial reasonableness or the law governing judicial sales, the notice of sale in misdescribing the location was so defective under the circumstances as to preclude a conclusion of commercial reasonableness.[2] Although Leasing Service Corporation vigorously contends that the facts of the instant case are distinguishable from those in *The Warren Company v. Little River Farms, Inc.,* 125 Ga. App. 332, 187 S.E.2d 568 (1972), where prejudice was demonstrated, the court nevertheless concludes that the reasoning of the court in *The Warren Company* is instructive. "[A] sale *must* be conducted at the place designated in the court order and any advertisement done pursuant thereto, since otherwise it would be easy to conceal the true place of sale . . . ." 125 Ga.App. at 332, 187 S.E.2d at 570 (emphasis in original). *See also Jones v. Garcia,* 538 S.W.2d 492 (Tex.Civ.App.1976).

The manner in which the sale was conducted was likewise faulty. The auctioneer first offered six pieces of equipment individually, and, acting on behalf of Leasing Service, made the only bid on each. The total of those bids aggregated $79,100. The auctioneer failed to offer the inventory of miscellaneous parts either by category or in their entirety as a unit. His testimony is

that "at the end of the auction of the individual bids, I just stated that, 'Now we will lump the whole thing together for any bulk bids for everything.'" Transcript of hearing, March 20, 1981, p. 66. Thus, the final bid of $79,100, including the miscellaneous parts, amounted to no more than the total of the separate bids for the individual items of equipment exclusive of the miscellaneous parts. The failure to offer the miscellaneous parts for sale separately from the bulk bid did not comport with the concept of commercial reasonableness. Neither did it comply with the terms of the stipulation/order which required the equipment to be offered for sale "first in individual units, and then on a lot basis." Stipulation/order, paragraph 2, p. 3.

It was the responsibility of Leasing Service Corporation as creditor to carry out the sale in a commercially reasonable manner within the framework of the stipulation/order. The court concludes that the bankruptcy court did not err in holding that the creditor, Leasing Service Corporation, who was the sole bidder and purchaser at its own sale, did not properly conduct the sale.

## IV.

The last issue is whether the bankruptcy court erred in holding that Leasing Service Corporation is precluded from recovering a deficiency judgment by reason of its failure to conduct the sale in a commercially reasonable manner. The West Virginia Supreme Court of Appeals has not addressed the issue. Three approaches have been de-

---

tomers. However, there is nothing in the record to suggest that the list contained notice of the public sale. Indeed, the context of Mr. Bagby's testimony suggests that the notice was part of the effort at selling the equipment by way of private sale. *See* transcript of the hearing held March 20, 1981, pp. 190–92.

2. Leasing Service Corporation points to the presence of other persons at the sale to demonstrate that the notice was not so defective as to preclude the attendance of other bidders. However, there is no evidence in the record before this court as to whom these persons were. Moreover, the evidence demonstrates that they were not bidders in that no bids were received other than those placed by the auc-

tioneer on behalf of Leasing Service Corporation. Robert Smith testified that when no bid was received for each individual item, he then placed a bid on it for Leasing Service. Transcript, p. 56.

It is noted that Mr. Cochran, Credit Manager for Fairchild, Inc., testified that he received no complaints by persons unable to attend the sale by reason of the defective notice. That, however, is not dispositive of the issue. The advertisement placed in the local newspapers specified that the person to contact about the auction was William Bagby, an employee of Leasing Service Corporation. No similar testimony was offered by Mr. Bagby, although called as a witness before the bankruptcy judge.

veloped by the courts in determining the result. The first approach, being the one adopted by the bankruptcy court, is that a commercially reasonable sale is a prerequisite to obtaining a deficiency judgment. The second and third approaches do not absolutely bar recovery of a deficiency judgment, but place the burden differently with respect to a showing of injury flowing from the unreasonableness of the sale. Both are premised on the observation that, inasmuch as § 9–507 of the Uniform Commercial Code provides that a debtor "has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part," the provided remedy was intended as the sole remedy, thereby excluding an automatic bar of any deficiency.

The second approach raises as a rebuttable presumption the conclusion that the fair market value of the collateral is equal to the indebtedness. To recover a deficiency, the burden thus is on the creditor to establish that the fair market value is less than the indebtedness. The final approach simply allows the debtor an action to recover damages for any injury sustained by the unreasonableness of the sale. The burden is, of course, on the debtor to establish his claim for damages.

It appears that a majority of the numerous courts which have considered the issue have adopted one of the approaches which does not absolutely bar a deficiency judgment. See cases collected at 10 A.L.R.4th 413 (1981). One reason cited for not barring a deficiency judgment is that such a result is contrary to notions of fair play. *Clark Leasing Corporation v. White Sands Forest Products, Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975) An absolute bar "smacks of the punitive and is directly contrary to Article Nine's underlying theme of commercial reasonableness." *United States v. Cawley,* 464 F.Supp. 189, 192 (E.D.Wash.1979), quoting *Clark Leasing Corporation,* 535 P.2d at 1081. Adoption of either of the other two rules has been characterized as "the more enlightened and equitable" rule. *United States v. Willis,* 593 F.2d 247, 260 (6th Cir. 1979).

Numerous other considerations expressed by various tribunals were reviewed in 10 A.L.R.4th 413. As already noted, courts have emphasized § 9–507 which provides that the debtor may bring an action to recover damages sustained as a result of the commercial unreasonableness of the sale, a provision viewed as indicating that a damage action is the sole remedy available to a debtor for a commercially unreasonable sale. In addition, the requirements for conducting a commercially reasonable sale are not seen as being as specifically set forth as under pre-Code law. Thus, it is argued, inasmuch as it is now more difficult for a foreclosing creditor to steer a straight course, missteps should not automatically result in the imposition of the harshest consequence. Finally, it is noted that the necessity of a repossession sale was brought about by the default of the debtor such that to prohibit recovery of the deficiency would be unjustified.

■ Of course, if a sale is found to be commercially unreasonable, the creditor is not without fault. Moreover, the statutory provision under consideration is a "self-help" statute and, in order to prevent abuse, actions taken under it ought to be strictly scrutinized. The court concludes, therefore, that equitable considerations dictate rejection of the absolute bar where fraud or the like is not present and, instead, adoption of the rule that presumes the value of the collateral to be equal to the amount of indebtedness, a presumption which the creditor must overcome in order to recover his deficiency.

Accordingly, for the reasons stated above, it is ORDERED that the order of the bankruptcy court be, and it hereby is, reversed insofar as it barred the appellant from obtaining any deficiency judgment is an automatic consequence of conducting a commercially unreasonable sale.

It is further ORDERED that this action be, and it hereby is, remanded for further proceedings not inconsistent herewith for the purpose of determining appellant's deficiency judgment, if any.

The Clerk is directed to forward certified copies of this order to all counsel of record and to the bankruptcy judge.