**J. C. JONES et al., Appellants,**

v.

**Raul C. GARCIA et al., Appellees.**

**No. 15636.**

Court of Civil Appeals of Texas, San Antonio.

June 23, 1976.

Daniel R. Rutherford, San Antonio, for appellants.

Oscar C. Gonzalez, Carter, Callender & Gonzalez, Richard W. Harris, Dobbins, Howard & Harris, James N. Martin, San Antonio, for appellees.

CADENA, Justice.

This is an appeal from an order temporarily enjoining defendants, J. C. Jones and wife, Lou N. Jones, from (1) foreclosing upon or selling any of the corporate stock of plaintiff, J. C. Jones Paint, Inc. (referred to in this opinion as the "corporation"), which was previously sold by defendants to plaintiff, Raul C. Garcia; (2) taking possession of, or attempting to exercise dominion over the corporate stock, inventory, or assets of the corporation; (3) interfering with the conduct of the business of the corporation or with the management of such business by Garcia; (4) harassing, intimidating, or otherwise interfering with persons dealing with such corporation or Garcia; and (5) from foreclosing upon or attempting to sell certain real property owned by Garcia.

Prior to September 1, 1975, defendants owned all of the stock of the corporation and were actively engaged in the management of the corporation's business. On September 1, 1975, Garcia and defendants entered into a contract for the sale of such shares of stock by defendants to Garcia for the sum of $325,000.00. Garcia paid defendants the sum of $10,000.00 in cash and executed a promissory note in the amount of $315,000.00, payable in monthly installments, for the remainder of the purchase price. To secure payment of such note Garcia executed a collateral pledge agreement covering the shares of stock and the assets of the corporation. The agreement pledging the assets of the corporation as security was executed by Garcia in his individual capacity and as president of the corporation, and was given to secure payment not only of the $315,000.00 note executed by Garcia, but also, payment of any other indebtedness owed by the corporation to defendants. Previously, on January 25, 1975, defendant, J. C. Jones, had advanced the sum of $15,000.00 to the corporation and had executed, as president, and on behalf, of the corporation, a demand note in that amount payable to himself.

On February 17, 1976, defendants made demand for payment of the $15,000.00 note. On that same day they declared that the $315,000.00 note was in default, exercised their right of acceleration, and demanded payment of the entire amount of principal and interest.

On March 4, 1976, defendants executed an instrument reciting default in payment of the two notes and giving notice that on March 12, 1976, between the hours of 9:00 A.M. and 12:00 A.M., all shares of the corporation and all assets of the corporation would be sold to the highest bidder "at the

door of the Courthouse in Bexar County, Texas." A copy of this notice was mailed to Garcia, but he denied receiving it, although he admitted that his attorney had told him of the impending sale.

The notice of sale was published in a newspaper on March 5, 8, 9, 10, and 11, 1976, and copies of it were posted on a bulletin at the south door of the courthouse and at two other public places.

On March 4, 1976, Garcia and the corporation filed suit seeking, among other things, injunctive relief against foreclosure by defendants. On that day the court issued a temporary restraining order prohibiting foreclosure and setting the hearing on plaintiffs' application for temporary injunction on March 12, 1976. Plaintiffs were unable to serve copies of the restraining order and notice of the temporary injunction hearing on defendants, and on March 11, 1976, the court, on plaintiffs' motion, reset the date for hearing of the application for temporary injunction. The new hearing date was March 18, 1976.

On March 12, 1976, J. C. Jones and his attorney went to the north door of the courthouse, where the attorney conducted the sale. J. C. Jones, the only bidder, purchased the shares of stock and the assets of the corporation for $60,000.00. The sale took place at 9:01 A.M. and was concluded at 9:03 A.M.

After the sale had taken place, Jones and his attorney entered the courthouse by way of the north door and proceeded down the first floor corridor in a southerly direction toward a coffee shop located on the first floor. Before they arrived at the coffee shop, they saw what they described as a "covey" of lawyers and deputy sheriffs walking in a northerly direction toward them. In order to avoid a "hassle," Jones and his attorney decided to have their coffee at a hotel located east of the courthouse. As they were exiting from the courthouse by way of one of the exits located on the east side of the building, they were served with the temporary restraining order and notice of the hearing on the application for temporary injunction.

That afternoon defendants filed their answer to plaintiffs' suit, as well as a motion to dissolve the temporary restraining order. On March 16, 1976, plaintiffs filed their first amended original petition, alleging the occurrence of the sale on March 12, and praying that the sale be set aside. They also prayed for temporary and permanent injunctive relief. The hearing resulting in the issuance of the temporary injunction commenced on March 18, 1976, and the order from which defendants appeal was signed March 26, 1976.

Defendants' points 4 and 5, asserting that plaintiffs' pleadings do not support the issuance of the temporary injunction, are without merit. Defendants did not call to the attention of the court the fact that plaintiffs' pleadings were not verified. This defect was waived. The complaint that the injunction is beyond the scope of the pleadings cannot be upheld. The pleadings in the case are not models of clarity, but prior to the introduction of evidence there was an exchange of remarks among the trial judge and the attorneys concerning the questions to be determined at the hearing. During this exchange, the attorneys for the parties agreed concerning the scope of the hearing. The judgment is well within the limits of such agreements, so that all issues resolved by the court were clearly tried by consent.

The statement of facts in this case consists of more than 600 pages, and numerous exhibits were admitted into evidence. Our examination of the statement of facts has been made unnecessarily difficult by the fact that we are without the benefit of an index. Nor was our task simplified by the fact that the attorneys persisted in adding, from their places at the counsel table, unsolicited remarks attempting to clarify, expand, or limit the answers of witnesses. In some instances counsel supplied, or at least suggested, the answer before the witness could respond to the question. One of the attorneys interrupted the examination of a witness by opposing counsel, or by the court, several times with attempts to interpose questions of his own and, when re-

buked by the court, lamented that he was being denied an opportunity to ask questions. Since no jury was involved, we do no more than note the existence of these improprieties and deplore the unnecessary confusion resulting from the failure to observe the most basic rules of orderly trial procedure.

We consider first that portion of the temporary injunction restraining defendants from taking possession of, or attempting to exercise dominion over, the corporate stock or assets of the corporation; interfering with the management and conduct of the business of the corporation by Garcia; and harassing, intimidating, or otherwise interfering with persons dealing with the corporation or with Garcia.

Our review of orders granting or denying a temporary injunction is limited to the determination of whether the action of the trial court can be classified as a clear abuse of discretion. *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962). To warrant the issuance of a temporary injunction, the applicant need only show the existence of a probable right and probable injury. A trial court does not abuse its discretion in granting a temporary injunction if the petition alleges a cause of action and the evidence presented tends to show that he will finally prevail in the litigation. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953).

The order granting the injunction recites that the trial court "found" that the foreclosure sale was invalid because the sale was not made in a "commercially reasonable manner" in that (1) the notice of sale was insufficient and misleading; (2) the notice was not advertised for an appropriate length of time; and (3) the notice did not properly describe the place at which the sale was to take place.

There is evidence to the effect that, in Bexar County, a notice reciting that a sale is to be held at the "door of the Courthouse" is uniformly interpreted as declaring that the sale will take place at the south door of the courthouse. There is evidence that no such sale has ever been conducted at any other entrance to the courthouse. The notice of sale was posted by defendants' attorney on a bulletin board maintained at the south entrance for the posting of notices. When asked why he had not posted the notice at the north entrance, the attorney replied that there was no place at the north entrance for the posting of notices of sale. The evidence indicates that Garcia and plaintiffs' attorneys, seeking to effect service of the restraining order on defendants, had gone to the south door of the courthouse. Defendants' attorney, during the course of presenting an argument to the trial court, stated that it was not defendants' fault that plaintiffs had assumed that the sale would be conducted at the south door, and that plaintiffs should have had deputy sheriffs and lawyers present at each entrance to the building.

In view of such evidence, we cannot say that the trial court abused its discretion in concluding that the notice was defective insofar as it attempted to describe the place of sale. At best, the notice failed to specify where the sale would be conducted. At worst, the notice had the effect of leading people to believe that the sale would take place at the south door, in which case the sale in question, which was conducted at the north door, did not take place at the location indicated by the notice. The evidence raises sufficient question concerning the commercial reasonableness of the circumstances under which the sale took place to warrant the issuance of an injunction to preserve the status quo until a final determination of the issue following a trial on the merits. Tex.Bus. & Comm.Code Ann. § 9.504.

We must also uphold that part of the injunction which temporarily restrains sale of Garcia's real property which was pledged as security for the payment of the $315,000.00 note. The evidence conclusively establishes that Garcia had made all payments due under such note and, while the evidence is conflicting, there is substantial credible evidence to the effect that Garcia

was conducting the business in a prudent businesslike manner without significantly impairing defendants' security or significantly reducing the equity represented by each share of the pledged stock of the corporation. Once again, given the nature of the testimony, we cannot say that the trial court abused its discretion in determining that the threatened foreclosure of the deed of trust lien should be enjoined pending a final hearing on the merits in order to maintain the status quo.

■ Defendant, J. C. Jones, testified that if he were denied the right to immediate possession of the shares of stock and assets of the corporation, it would be impossible to determine the extent to which he had been pecuniarily damaged if he should prevail following a trial on the merits as a result of being temporarily deprived of such possession. Such evidence is sufficient to indicate that damages resulting from a temporary deprivation of the right to possession and of the right to manage and operate the business would result in damages which would be difficult to ascertain. The trial court did not abuse its discretion in determining that denial of the temporary injunction would result in irreparable harm to plaintiffs and that relief by way of damages would be inadequate.

Finally, defendants complain of the action of the trial court in setting the amount of the injunction bond at only $10,000.00, and ask that we increase the amount of the bond. In support of this complaint, defendants argue that Garcia could within a very short period of time convert the assets of the corporation to cash "and spirit them away." It is also argued that, because of the manner in which Garcia was operating the business, all of the assets of the corporation could be dissipated. In addition, it is pointed out that defendants' only additional security is the lien of an apartment complex owned by Garcia in which Garcia had an

equity of only $12,000.00. The argument also refers to the testimony of J. C. Jones to the effect that if a temporary injunction were granted, he would be damaged in the amount of $278,000.00.

■ The problem with defendants' argument is that it is based on the assumption that the testimony of J. C. Jones compels the drawing of certain conclusion when, in fact, his testimony amounts to no more than an expression of fear based on his contention that Garcia is "milking" the corporation. In view of the testimony to the effect that the corporation is in sound condition and the testimony indicating that the corporation is, in fact, making a higher profit than that which was realized during the period when J. C. Jones was in control, it cannot be said that the trial court abused its discretion in concluding that these fears had no basis in fact.

■ There is no evidence concerning the present market value of the apartment complex which Garcia pledged as security for the payment of the $315,000.00 note. There is no evidence indicating that it has deteriorated in value, nor is there any hint that Garcia is not operating it in a prudent manner. There is no possibility that this security can be destroyed or placed beyond defendants' reach. Once again, defendants' contention can be accepted only if we focus our attention on evidence favorable to defendants and disregard all evidence to the contrary. An appellate court cannot base a finding that the trial court abused its discretion on such a one-side evaluation of the testimony.[1]

Nothing in this opinion is to be construed as holding that the sale held on March 12, 1976, was in fact void, or that plaintiffs are not, in fact, in default. Final determination of those issues must await a trial on the merits.

1. The record reflects that the trial court had completely familiarized itself with the numerous financial statements, balance sheets, and profit and loss statements introduced in evidence. This knowledge of the contents of the numerous exhibits is reflected not only in the questions which the court asked of the witnesses, but also in the fact that, on numerous occasions, the court assisted the attorneys by pointing out to them the particular exhibit which would facilitate the questioning of the witnesses by the attorneys.

The judgment of the trial court is affirmed.