

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00102-CV

RICHARD H. DREW, III, Appellant

V.

A.C.B., Appellee

On Appeal from the 40th District Court
Ellis County, Texas
Trial Court No. 94,755

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

After Joseph Brookshire picked up his eighteen-year-old daughter, A.C.B., from the airport, they returned to his home in Midlothian, where Joseph discovered that his wife, Tina, had committed suicide. The next day, relatives of Joseph and Tina, including Tina's sons, Jordan and Richard H. Drew, III, gathered at his house to grieve their loss. That night, A.C.B. and Richard were on the porch where they drank, talked, and eventually kissed, after which A.C.B. lost consciousness. When she awoke the next morning, A.C.B. discovered that Richard had had non-consensual sex with her the night before. As a result, A.C.B. filed this suit against Richard for actual and exemplary damages resulting from the assault and for a temporary injunction.[1] After a trial to the bench, the 40th Judicial District Court of Ellis County[2] awarded A.C.B. $10,000.00 in damages and entered an injunction permanently enjoining Richard from contacting or communicating with A.C.B by any means, from coming within 1,000 feet of A.C.B. at any location, and from coming within 1,000 feet of her father's house in Midlothian.

On appeal, Richard asserts that (1) the trial court abused its discretion in granting the permanent injunction and (2) there is legally insufficient evidence supporting the award of damages.[3] We find that the trial court abused its discretion in granting the permanent injunction,

---

[1]Richard did not assert at trial or on appeal that A.C.B.'s pleadings do not support the imposition of a permanent injunction. Further, the record reflects that the permanent injunction was tried by consent. *See Jones v. Garcia*, 538 S.W.2d 492, 495 (Tex. Civ. App.—San Antonio 1976, no writ).

[2]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]In his second issue, Richard asserts that there was no evidence that proved damages, which is a challenge to the legal sufficiency of the evidence.

but that Richard's complaint regarding the trial court's damage award is without merit. Consequently, we reverse in part and affirm in part the trial court's judgment.

## I. Background

As pertinent to the issues on appeal, A.C.B. testified that, on the night that the families had gathered at Joseph's house to deal with Tina's suicide, A.C.B. and Richard were on the porch drinking and talking. She testified that at first she was aware of everything, but then was completely unaware. She did not believe that she was intoxicated. Although she and Richard had never kissed before, she remembered that they were kissing,[4] that she became disoriented, and that Richard was holding her neck when she felt pressure on it. When she was awakened by her father the next morning, she was clothed, except for her underwear, and she was bruised and in pain.

Having no recollection of having had sex, A.C.B. was panicked and confused. When she looked in the mirror, she saw red marks on her neck, which later turned to symmetrical dark bruises on both sides. She found Richard and asked him if they had sex, and he affirmed that they did. She testified that it was not at all consensual. As a result of the encounter, A.C.B. had soreness in her groin for weeks and soreness in her neck. Later that day, A.C.B. told her father what had happened, and they reported the assault to the Midlothian police.

Afterward, she went to the emergency room for testing and treatment. She continued to see gynecologists because of the pain in her groin, which lasted a month or more. A.C.B. testified that, after the assault, she had to quit school and lost her first job because she could not stop

---

[4]On cross-examination, A.C.B. testified that she clearly remembered them kissing, that she asked Richard to stop, and that he had agreed to stop.

3

thinking about it. She said that she became paranoid and depressed and that she had to take anti-depressants. She testified that she has been in counseling since the assault and that she has had to move back in with her parents in a gated community. A.C.B also testified that now she has nightmares and difficulty sleeping. A.C.B. testified that she has had no contact with Richard since the day after the assault.

Joseph confirmed A.C.B.'s outcry and that she wanted to report the assault to the police. He also testified that he has had no contact with Richard since the day he found out about the assault. Joseph testified that, before the assault, A.C.B. was very energetic, outgoing, and exploratory. Since the assault, she has become very reserved and somewhat paranoid about safety and security. He had no doubts that the assault has caused her significant emotional distress. Toni Brookshire, A.C.B.'s mother, testified that, since the assault, A.C.B. had become very withdrawn, has problems sleeping, and wakes up with nightmares. She also confirmed A.C.B.'s need for counseling and medications as a result of the assault. Toni has had no contact or communication with Richard.

Richard's account of the events that night were quite different. He testified that both he and A.C.B. were pretty intoxicated. He remembered them kissing on the porch, then after everyone else had gone to bed, A.C.B. grabbing his hand and taking him to the office, where there was a futon. There they began kissing again. He denied having any conversation about stopping and said that A.C.B. did not say anything to indicate that she did not consent to having sex. Richard testified that he remembers having sex "[i]n and out of visions." He did not remember having his hands on her neck while kissing, but said it was a possibility while they were having sex. He

4

denied that A.C.B. ever passed out, or that he caused her to do so. Nevertheless, he acknowledged that A.C.B. asked him the next day if they had sex. According to Richard, when he told her they had, she smiled and said that she thought so, and they then exchanged telephone numbers.

## II. Granting the Permanent Injunction Was an Abuse of Discretion

In his first issue, Richard asserts that the trial court abused its discretion by granting the permanent injunction. A permanent injunction is appropriate when the requesting party shows "(1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law." *Basham v. Gardner*, No. 10-05-00398-CV, 2007 WL 2389990, *at 4 (Tex. App.—Waco Aug. 22, 2007, no pet.) (mem. op.) (citing *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). Richard argues that A.C.B. failed to show the existence of a wrongful act and the existence of imminent harm.

We review the trial court's grant of a permanent injunction for abuse of discretion. *Id.* (citing *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998)). A trial court abuses its discretion when it "(1) acts arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplies the law to the established facts of the case." *Livingston v. Livingston*, 537 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690–91 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). When the trial court's decision is unsupported by at least some substantial and probative evidence, there is a clear abuse of discretion. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 691 (Tex. App.—

5

Houston [1st Dist.] 2007, no pet.) (citing *Envoy Med. Sys., L.L.C. v. State*, 108 S.W.3d 333, 335 (Tex. App.—Austin 2003, no pet.)).

"The purpose of injunctive relief is not to grant relief for past actionable wrongs or to prevent commission of wrongs not imminently threatened." *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.) (citing *Tex. Emp't Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex. Civ. App.—El Paso 1976, no writ)). Rather, "the purpose of injunctive relief is to halt wrongful acts that are either threatened or in the course of accomplishment." *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Martinez*, 545 S.W.2d at 877). In this case, although there was evidence of a past wrongful act, there was no evidence that Richard threatened any future wrongs against A.C.B. Indeed, there was no evidence that Richard had ever attempted to contact or communicate with A.C.B. since the day of the assault, or that he intended to do so in the future. Hence, there was neither evidence of a threatened or continuing wrongful act, nor evidence of imminent harm. Consequently, we find that the trial court abused its discretion in granting the permanent injunction in this case.[5] We sustain Richard's first issue.

### III.    Richard's Complaint Regarding the Award of Damages is Without Merit

Richard also challenges the legal sufficiency of the evidence supporting the trial court's award of damages. Richard argues that the trial court awarded A.C.B. $10,000.00 in exemplary

---

[5]We recognize that the Texas Code of Criminal Procedure may enable the victim of a sexual assault to obtain a protective order against her assailant without the necessity of showing a threat of a future wrongful act. *See* TEX. CODE CRIM. PROC. ANN. art. 7A.01(a)(1) (West Supp. 2017), art. 7A.03(a) (West 2015). However, A.C.B. did not seek a protective order under the Code of Criminal Procedure. Further, the record shows that the parties and the trial court understood that A.C.B. was seeking a temporary restraining order and injunctive relief under the civil statutes.

damages and that there was no evidence supporting an award for exemplary damages. However, the record in this case shows that the trial court's judgment was for actual damages only.

The trial court's judgment recites that "[Richard] is liable to the Plaintiff [A.C.B.] for her damages as alleged in the Plaintiff's Petition" and orders that A.C.B. is entitled to $10,000.00 for her damages. A.C.B.'s petition asked for both actual and exemplary damages. However, at trial, after the parties had rested and closed, the trial court stated:

> At the end of the day there's no amount of money that could compensate A.C.B. for the injury sustained, however, trial court deems that the pain, suffering, mental anguish, any other damages as testified to that an award of $10,000 in favor of A.C.B. as against [Richard] would be substantiated and justified and proved out also by a preponderance of the evidence.

Pain, suffering, and mental anguish are all elements of actual damages. Thus, the record shows that the trial court's judgment was for actual damages only. Consequently, we find that Richard's second issue is without merit.[6]

For the reasons stated, we reverse that part of the trial court's judgment granting a permanent injunction and render judgment denying A.C.B.'s request for a permanent injunction. In all other respects, we affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     June 26, 2018
Date Decided:      July 10, 2018

---

[6]To the extent that Richard's complaint could be construed as challenging the legal sufficiency of the evidence supporting an award for actual damages, we find that A.C.B.'s testimony set forth above, as supported by the testimony of her parents, was legally sufficient to support an award of actual damages.